[619 NYS2d 430]

JOSEPH A. LO CASCIO, III, Respondent, v JAMES V. AQUAVELLA, M.D., P. C., et al., Appellants.

Fourth Department, November 16, 1994

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle,* Rochester *(Robert B. Calihan* of counsel), for appellants.

*Harter, Secrest & Emery,* Rochester *(Jeffrey P. Stone* and *Thomas Smith* of counsel), for respondent.

## OPINION OF THE COURT

BOEHM, J.

The issue raised in this appeal is whether defendants, James V. Aquavella, M.D., P. C., a professional corporation (the Company), and James V. Aquavella, M.D. (Aquavella), are liable to plaintiff for breach of their contract set forth in a letter of intent. Supreme Court held that defendants are liable to plaintiff under the terms of the letter of intent. In our view, that determination was premature.

I

Aquavella, an ophthalmologist in Rochester, New York, advertised in an ophthalmology journal for a candidate inter-

ested in becoming a partner in, and an eventual successor to, defendant's medical practice. Plaintiff, an ophthalmologist and Director of the Corneal Service Center at the University of South Carolina, responded to the advertisement and, on February 12, 1987, the parties entered into a letter of intent. The letter of intent provided that plaintiff would be given an opportunity to become a shareholder in the Company if he completed a two-year trial period of employment with the Company "in a manner satisfactory to the Company" (para 3a), and the Company determined after one year that "it would be appropriate" for plaintiff to become a shareholder of the Company upon the expiration of the second year (para 3b). The letter of intent further provided that the determination whether "it would be appropriate" for plaintiff to become a shareholder would be made based upon plaintiff's professional capability, his past and expected future contributions to the Company's success, and plaintiff's ability to work well with employees. Upon becoming a shareholder, plaintiff would be offered 50% of Aquavella's stock in the Company at a price based upon a fixed formula. The letter of intent also provided, *inter alia,* that plaintiff and Aquavella would enter into a shareholder agreement on "generally similar" terms to be negotiated within a formula based upon the Company's "collectible accounts receivable and the fair market value of its tangible assets", with no value for good will. Lastly, the parties would enter into an employment agreement, under which plaintiff would receive for a three-year period after becoming a shareholder compensation equal to 66.66% of Aquavella's compensation.

In June 1988, at the end of the first year of plaintiff's employment, Aquavella advised plaintiff that he had satisfied the condition in paragraph 3b of the letter of intent, thus indicating that plaintiff had performed to the satisfaction of the Company and Aquavella, its sole shareholder, and that "it would be appropriate" for plaintiff to become a shareholder upon the satisfactory completion of his second year of employment on July 1, 1989.

In October 1988 plaintiff arranged for an evaluation of the Company by Physician International to determine the value of the Company and to ascertain whether the practice was overvalued in relation to the formula proposed in the letter of intent. After receiving the evaluation, plaintiff proposed modifications to the buy-in terms in the letter of intent. This was followed by Aquavella's proposal of other modifications. In

January 1989 Aquavella sent plaintiff a memo, which in addition to proposing modifications to the formula in the letter of intent, further stated that it was Aquavella's "feeling" that he and plaintiff had "established a good working relationship over the past two years, and [that Aquavella looked] forward to a continued close working relationship."

The parties were unable to agree on the proposed modifications, and in March 1989 plaintiff wrote to Aquavella stating that, because the parties could not agree, "the only agreement between us remains the values, terms and conditions contained in our February 12, 1987 letter agreement. I am prepared to honor that agreement and would ask that you confirm that you will do the same." According to plaintiff, in May 1989 Aquavella assured him in a telephone conversation that Aquavella would honor the letter of intent. On January 12, 1989, Aquavella sent plaintiff a memo, stating in part: "Following our meeting on Saturday, 1/7/89, I have instructed Fred [Stoffel, defendant's accountant] to draw up a new set of figures and projections. Upon your return, I would like you to review them and make your final decision. If you are in agreement with the basic numbers, the three of us will meet so Fred can explain the mechanics and flow to both of us, and we can begin implementation."

On June 8, 1989, however, Aquavella wrote to plaintiff terminating their professional relationship, giving as reasons plaintiff's performance and productivity, his relationship with staff and patients, and their failed attempts to modify the terms of the letter of intent. Plaintiff then commenced this action against defendants for, *inter alia,* breach of contract.

In a deposition, plaintiff testified that early in 1989, at a midterm review, Aquavella informed plaintiff of his satisfactory progress, that plaintiff met Aquavella's high professional standards, and that Aquavella thought they would be able to work well together. It is undisputed that in January 1989 Aquavella wrote to the Credentials Committee of Highland Hospital praising plaintiff's professional competence.

## II

The threshold determination to be made is whether the material terms in the letter of intent concerning the formation of the parties' relationship are sufficiently certain and specific "so that what was promised can be ascertained" *(Martin Delicatessen v Schumacher,* 52 NY2d 105, 109). Thus,

"a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable [citations omitted]" *(Martin Delicatessen v Schumacher, supra,* at 109). The very essence of a contract is "[d]efiniteness as to material matters * * * [W]ithout it a court could not intervene without imposing its own conception of what the parties should or might have undertaken, rather than confining itself to a bargain to which they have mutually committed themselves [citation omitted]" *(Bernstein v Felske,* 143 AD2d 863, 864-865).

Even were we to agree with defendants' contention that the clauses in the letter of intent dealing with the future execution of the shareholder and employment agreements are too indefinite to be enforceable, those provisions are not material to the right of plaintiff to become a shareholder in the Company. Nothing in either the letter of intent or the parties' conduct supports the conclusion that the right of plaintiff to become a shareholder was contingent upon entering into the shareholder and employment agreements. The fact that some matters were left open in the letter of intent does not defeat it as an otherwise binding contract *(see, Four Seasons Hotels v Vinnik,* 127 AD2d 310, 317). "A contract does not necessarily lack all effect merely because it expresses the idea that something is left to future agreement [citations omitted]" *(Four Seasons Hotels v Vinnik, supra,* at 317; *see also, Cobble Hill Nursing Home v Henry & Warren Corp.,* 74 NY2d 475, 483, *cert denied* 498 US 816).

The crucial agreement between the parties concerned plaintiff's receipt of an option to purchase 50% of the stock in the Company at a price determined by a fixed and ascertainable formula, provided plaintiff satisfied the two conditions precedent. If plaintiff met those conditions, he was immediately entitled to become an equal shareholder in the Company. That right did not depend, however, upon the successful negotiation of the terms of the shareholder and employment agreements.

It is uncontested that plaintiff satisfied the second condition after his first year of employment by defendants' determination that "it would be appropriate" for plaintiff to become a shareholder in the Company. The court concluded that plaintiff had also satisfied the first condition in that he had completed the two-year employment contract without violation of its terms. In our view, that was not the appropriate gauge. The letter of intent makes no mention of satisfactory completion of the trial period of employment as the standard by

which the Company would evaluate plaintiff's performance. Rather, the proper standard for determining whether plaintiff's professional performance was satisfactory to the Company depended exclusively upon the decision of Aquavella, the Company's sole shareholder and the only one capable of making that evaluation. Such a construction of the second condition is entirely reasonable. The well-being of the Company depended upon the professional competence of plaintiff and his good working relationships with Aquavella and the Company's patients and staff, a subjective evaluation necessarily to be made by Aquavella. Such subjective evaluation, however, required an objective standard, i.e., was Aquavella's dissatisfaction genuine?

The issue whether the dissatisfaction of an employer is genuine, or whether the agreement was terminated in bad faith, is a question of fact *(Golden v Worldvision Enters.,* 133 AD2d 50, *lv denied* 71 NY2d 804; *Hortis v Madison Golf Club,* 92 AD2d 713; *Fursmidt v Hotel Abbey Holding Corp.,* 10 AD2d 447). Where "[n]o objective standards of reasonableness can be set up by which the effectiveness of the [employee's] performance in achieving the effect sought can be measured", the sole issue is whether "the jury be satisfied that [the dissatisfaction of the employer was] honestly arrived at" *(Fursmidt v Hotel Abbey Holding Corp., supra,* at 450; *see, Golden v Worldvision Enters., supra,* at 51; *Hortis v Madison Golf Club, supra,* at 714). Here, that issue is contested.

In view of our determination, it is unnecessary to reach defendants' remaining contention. Accordingly, the order appealed from should be modified by vacating the third ordering paragraph, and the matter should be remitted to Supreme Court for a factual determination whether Aquavella's dissatisfaction with plaintiff was genuine and honestly arrived at.

GREEN, J. P., BALIO, FALLON and DOERR, JJ., concur.

Order unanimously modified, on the law, and as modified, affirmed, without costs, and matter remitted to Supreme Court for further proceedings in accordance with the opinion by BOEHM, J.