[675 NYS2d 5]

Non-Linear Trading Company, Inc., Appellant, v Braddis Associates, Inc., Respondent.

First Department, June 2, 1998

## APPEARANCES OF COUNSEL

*Cori Sherman* of counsel, New York City (*Rodney A. Brown* on the brief; *Brown & Fox, P. C.,* attorneys), for appellant.

*Anthony M. Grandinette* of counsel, Mineola (*Grandinette & Serio, P. C.,* attorneys), for respondent.

## OPINION OF THE COURT

RUBIN, J.

In this action, plaintiff Non-Linear Trading Company seeks to recover its initial capital contribution in a partnership that was unsuccessful in achieving the main purpose for which it was formed. Supreme Court dismissed the complaint, finding the agreement sued upon to be indefinite. While this Court concludes that the contract is enforceable, the terms of the agreement afford plaintiff no right to relief and, therefore, the cause of action for breach of contract was properly dismissed. The defect in performance alleged to comprise the breach—the failure to deliver a marketable product—is not promised in the subject agreement but, rather, is expressly disclaimed. This deficiency obviously occurred to plaintiff because, in opposing defendant's motion for dismissal, plaintiff cross-moved to amend the complaint to change the theory of breach from failure to produce the product to failure to devote sufficient resources to its development. The original and the proposed amended complaint both allege that defendant falsely represented its intention to accomplish the purpose of the partnership agreement, thereby fraudulently inducing plaintiff to enter into the agreement.

Having concluded that the partnership agreement is enforceable, as plaintiff contends, it remains to be decided whether Supreme Court erred in denying plaintiff's motion insofar as it seeks to amend the complaint and to conduct further discovery. That the contract between the parties is enforceable and that the enterprise failed in pursuit of its purpose do not compel the conclusion that plaintiff has stated a valid claim for recovery of its investment.

On January 12, 1993, plaintiff Non-Linear Trading Company and defendant Braddis Associates entered in to an agreement to form "a joint venture partnership" for the purpose, *inter alia*, of developing a software-based commodities trading system. The agreement recites: "The business of the partnership shall include, but not be limited to, (a) the use of Braddis' existing research by a discretionary commodity interest trader

or traders, (b) the development and use of additional research, signals and indicators by a discretionary commodity interest trader or traders, and (3) the development of a mechanically-driven software system or systems for the trading of commodity interests based on the Partnership's proprietary market research, signals and indicators (collectively, the 'Partnership's Products')." These provisions reflect the terms of a letter of intent dated November 24, 1992 drafted by James Park, an attorney and principal of plaintiff Non-Linear Trading Company (although it is referred to in the letter as "the SUMA group").

Paragraph 3 of the partnership agreement provides that plaintiff will make an initial capital contribution of $80,000 and that "the first $400,000 of net operating profits earned by the Partnership (without reduction for the $80,000 expended pursuant to this Paragraph 3) shall be used by the Partnership to fund additional research". With respect to recoupment of plaintiff's investment, paragraph 5 of the agreement provides that "the next $80,000 of net profits shall be allocated to [plaintiff] NLTC". These provisions likewise mirror those contained in Mr. Park's letter of intent with respect to the funding of the joint venture and the return of plaintiff's initial capital contribution. However, paragraph 3 of the partnership agreement adds, in conclusion: "Nothing in this agreement shall be construed as a warranty or representation by Braddis that research and development activities will lead to the actual development of products, or if actually developed, that there will be a commercially usable product."

The agreement grants a license to the partnership, plaintiff, SUMA Capital Corporation and their affiliates to use research and reports assembled by defendant, and provides that any profit derived from their use "shall promptly be paid to the Partnership." With this exception, the agreement is silent with respect to the source of the anticipated $400,000 in operating revenue to be applied to development of the software trading system.

Plaintiff made the initial capital contribution of $80,000 under the agreement early in 1993. By early 1994, it is apparent that plaintiff regarded defendant's efforts to produce the software as unavailing. In a letter dated February 7, 1994 bearing the letterhead of Paradigm Capital Management, Mr. Park makes reference to a conversation in which Ron Brandes, president of defendant Braddis Associates, indicated that the software had not been completed as "promised both in our contract and in continuing conversations over the past year."

The letter expresses misgivings at a suggestion by Mr. Brandes that "you and I together attempt to trade the signals that Braddis Associates has been generating." It continues, "Neither of us is a trader (as each of us has proven in the past). Moreover, the whole purpose of the collaboration was for you to create a system of mechanical trading signals that would be valuable (i.e., saleable) to a discretionary trader". Mr. Park goes on to suggest that "it would be best for us to agree that the project has been unsuccessful and move on to other endeavors by retroactively voiding our contract—you would return to us the $80,000, and we would tear up the agreement." He concludes, anomalously, "The obligations that were created under the contract, however, must be satisfied before we can go on. I now believe that the return of the $80,000 is in order."

When the proposed repayment was not forthcoming, plaintiff commenced this action seeking dissolution of the partnership, rescission of the partnership agreement and damages for breach of fiduciary duty. The original complaint dated April 20, 1994 alleges that defendant "failed to perform" its obligation pursuant to the contract, having "failed to develop Partnership Products." It seeks rescission based upon fraudulent inducement (second cause of action) and recovery of expenses based upon breach of fiduciary duty (third cause of action). The complaint seeks recovery of plaintiff's initial capital contribution of $80,000, together with an additional $75,000 in unspecified related expenses.

In response to defendant's motion to dismiss the complaint, plaintiff, in separate cross motions, sought leave to amend the complaint and to compel completion of discovery prior to the determination of the motion for summary judgment. The proposed amended complaint dated December 27, 1995 likewise seeks dissolution of the partnership, rescission of the partnership agreement and damages for breach of fiduciary duty. In both instances, the third cause of action alleging breach of fiduciary duty restates the assertions of the second cause of action seeking rescission, merely adding the claim for expenses incurred in performing plaintiff's obligations under the agreement. However, recovery of damages for breach of contract under the proposed amended complaint is predicated on the ground that defendant Braddis Associates "failed to use its best efforts, expend sufficient time and effort, and allocate sufficient staff to research and develop Partnership Products, and has not in fact developed Partnership Products".

Defendant's notice of motion for summary judgment purports to be submitted pursuant to CPLR 3212. While a summary

judgment motion is premature prior to joinder of issue (CPLR 3212 [a]), the affidavit of Ron Brandes, defendant's principal, makes it clear that the motion is directed at the sufficiency of the complaint. Specifically, defendant notes that the breach of performance asserted in the original complaint is contradicted by the plain language of the partnership agreement, which specifically disclaims any representation either that a software trading system can be developed or that it will prove to be marketable. The original complaint, stripped of its equitable trappings, asserts a cause of action for breach of a promise to produce "Partnership Products" and, the recitation of the notice of motion notwithstanding, defendant's application seeks dismissal for failure to state a cause of action (CPLR 3211 [a] [7]; 104).

In his affidavit in support of the motion to dismiss, Mr. Brandes contends that the partnership agreement reflects the understanding that $480,000 "was the *minimum* financial amount necessary to accomplish the partnership goals." It goes on to charge that plaintiff breached its obligations under the agreement by failing to secure "the necessary investors through marketing of the partnership to produce profits which, in turn, could be used to conduct research and develop a usable computer program capable of forecasting the market." With respect to the merits of the complaint, the affidavit states that, following execution of the partnership agreement, "myself and my employees spent at least half of our work week working toward the development of the Partnership Products. Even after the resources to fund the project were depleted, my employees and I spent at least thirty-five cumulative hours a week on the project until approximately February 1994."

Defendant's motion for summary judgment was precipitated when, in October 1995, plaintiff served a subpoena duces tecum on defendant's bank for the purpose of determining how the $80,000 capital contribution had been applied to partnership expenditures. Defendant moved to quash the subpoena and thereafter moved for dismissal of the complaint. In his affidavit in support of plaintiff's motion for discovery and in opposition to the motion for summary judgment, Michael A. Natbony, plaintiff's president, asserts that he made numerous verbal demands "that the defendant provide an accounting of the Partnership funds." As to defendant's allegation that plaintiff breached its obligation to market the partnership's services, Mr. Natbony states that "such an obligation on the part of Non-Linear is not found anywhere on the face of the Agree-

ment." He adds that plaintiff fully performed its specified obligations—namely, retaining a discretionary trader, maintaining financial records and complying with regulatory and reporting requirements relating to trading activity. Counsel's affidavit notes that defendant has supported expenditures on behalf of the partnership of only $41,619.61 with copies of canceled checks and reiterates the need for the production of defendant's bank records as well as the need for discovery with respect to defendant's allocation of staff to the project.

In granting defendant's motion for dismissal of the complaint, Supreme Court reasoned that the partnership agreement is vague and therefore fails on the ground of indefiniteness: "The contract and the parties' other submissions provide no objective means by which a motion court or trier of fact can determine whether defendant has breached the Agreement. To be enforceable, a contract which expressly requires a party to apply its best efforts necessitates a clear set of guidelines against which to measure the party's best efforts (*see, Bernstein v Felske*, 143 AD2d 863, 865). The very essence of a contract is definiteness as to material matters. Without such definiteness a court could not intervene without imposing its own conception of what the parties should or might have undertaken rather than confining itself to a bargain to which they have mutually committed themselves (*see, LoCascio v Aquavella*, 206 AD2d 96, 100). The instant contract is unenforceable because it defies any interpretation as to what it requires defendant to do."

There is no question that the subject contract is a source of confusion. It is apparent from documents contained in the record that the parties to this dispute entertain disparate views as to the objectives of the joint venture and their respective obligations under the partnership agreement. Plaintiff takes the position that, for its investment of $80,000, defendant was to produce a software trading system. Defendant emphasizes the express disclaimer of any assurance such a system can be developed or that it will prove commercially viable, if produced. Defendant notes that the partnership agreement anticipates development costs approaching half a million dollars. Defendant further maintains that its efforts were thwarted by plaintiff's breach of the agreement in failing to market the partnership's existing research materials to generate the necessary revenue to support research and development. Plaintiff, while strenuously asserting that Supreme Court erred by failing to uphold a contract requiring defendant to use its "best ef-

forts", dismisses as "fallacious" any asserted obligation on its part to market the partnership so as to generate revenue. Plaintiff thereby disavows any implicit reciprocal obligation on its part to use its best efforts to advance the purposes of the joint venture.

A contract, however, is not rendered unenforceable merely because the parties differ in their subjective interpretation of the instrument. Construction of an agreement presents a question of law for the court and, where it is otherwise " 'clear, unequivocal and understandable' ", the contract will be enforced without resort to extrinsic evidence (*Federal Deposit Ins. Corp. v Herald Sq. Fabrics Corp.*, 81 AD2d 168, 180 [quoting *Bethlehem Steel Co. v Turner Constr. Co.*, 2 NY2d 456, 460], *lv dismissed* 55 NY2d 602).

It is settled that a party's promise to use best efforts to accomplish the purpose of an agreement is valid consideration that will be implied, if necessary, to avoid failure of the contract for lack of mutuality, especially where the parties have indicated the intent to be contractually bound (*Wood v Duff-Gordon*, 222 NY 88; *Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 265-266). The requirement of definiteness is designed to ensure "that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement" (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482, *cert denied* 498 US 816) and also to ensure that the nature of the parties' respective obligations is reasonably certain so as to enable the court to discern a breach and fashion an appropriate remedy (*supra*).

It is not disputed that the partnership agreement expresses the intention of the parties to be bound (*Conopco, Inc. v Wathne Ltd.*, 190 AD2d 587, 588, citing *Four Seasons Hotels v Vinnik*, 127 AD2d 310, 317). Under these circumstances, a finding that a contract fails for indefiniteness is " 'at best a last resort' " (*Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp.*, 78 NY2d 88, 91, quoting *Cohen & Son v Lurie Woolen Co.*, 232 NY 112, 114). "Thus, where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain" (*supra,* at 91).

The rights and obligations of partners are determined by the agreement between them, which may contain any terms not precluded by law or policy (*Riviera Congress Assocs. v Yassky*, 18 NY2d 540, 548, citing *Lanier v Bowdoin*, 282 NY 32, 38; *see*

*also, Hynes v Barr*, 225 AD2d 588; *Macklowe v 42nd St. Dev. Corp.*, 170 AD2d 388). Under the terms of the partnership agreement at issue, plaintiff is not entitled to recover either its capital investment or the expenses of its own performance upon the failure of the venture. In the absence of operating revenues exceeding $400,000, the agreement confers no right to the return of plaintiff's initial capital contribution, and nothing in the agreement gives plaintiff the right to recoup expenses incurred in carrying on the partnership's business. Furthermore, as a general rule, "partners cannot sue each other at law unless there is an accounting, prior settlement, or adjustment of the partnership affairs" (*Agrawal v Razgaitis*, 149 AD2d 390, citing *Lord v Hull*, 178 NY 9). "It is well established that an action at law may not be maintained by one partner against another for any claim arising out of the partnership until there has been a full accounting except where the alleged wrong involves a partnership transaction which can be determined without an examination of the partnership accounts" (*Kriegsman v Kraus, Ostreicher & Co.*, 126 AD2d 489, 490, citing *St. James Plaza v Notey*, 95 AD2d 804).

In the course of opposing defendant's motion to dismiss the complaint and advancing the cross motion to amend the complaint, plaintiff's theory of recovery seems to have undergone a significant transformation. The affidavit of plaintiff's president, Michael A. Natbony, while still alleging defendant's failure to devote adequate resources to development of the software trading system, abandons the contract theory of breach of performance and, instead, predicates recovery on the tort theory of fraudulent misrepresentation. The amended complaint alleges that plaintiff was induced "to enter into the Partnership Agreement based on the false representation that Braddis Associates would use its best efforts, expend sufficient time and effort, and allocate sufficient staff to research and develop Partnership Products for the Partnership" and that "Braddis Associates has materially failed to perform its obligations from the inception of the partnership to date." Having apparently realized that it has no basis for recovery under the partnership agreement, plaintiff now seeks to avoid its operation on the theory that it was induced to enter into the partnership under false pretenses.

Because the legal relationship of the partners is determined by the agreement between them, it is incumbent upon plaintiff to establish that the tortious conduct alleged in the proposed pleading is separate and distinct from any breach of the governing contract. As the Court of Appeals stated in *Clark-Fitzpatrick, Inc. v Long Is. R. R. Co.* (70 NY2d 382, 389-390):

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated * * * This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract * * * ·

"Merely charging a breach of a 'duty of due care', employing language familiar to tort law, does not, without more, transform a simple breach of contract into a tort claim."

According to the allegations of plaintiff's proposed amended complaint, defendant promised to "expend sufficient time and effort, and allocate sufficient staff" to develop the anticipated software. Defendant did not devote adequate resources to the effort as promised and, plaintiff concludes, defendant thereby induced plaintiff to invest in the partnership venture by means of a fraudulent misrepresentation.

As this Court stated in *East Asiatic Co. v Corash* (34 AD2d 432, 434), the granting of leave to amend "without passing upon the validity of the causes of action as amended * * * represents a procedure which is no longer tolerable." As we stated more recently, "While leave to amend a pleading is freely granted (CPLR 3025 [b]; *Edenwald Contr. Co. v City of New York*, 60 NY2d 957), this Court has consistently held that, in order to conserve judicial resources, an examination of the underlying merits of the proposed causes of action is warranted (*Brennan v City of New York*, 99 AD2d 445; *East Asiatic Co. v Corash*, 34 AD2d 432)" (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209). Therefore, a motion for leave to amend a pleading "must be supported by an affidavit of merits and evidentiary proof that could be considered upon a motion for summary judgment" (*Nab-Tern Constructors v City of New York*, 123 AD2d 571, 572, citing *Walden v Nowinski*, 63 AD2d 586). A pleading alleging fraud is required to set forth in detail "the circumstances constituting the wrong" (CPLR 3016 [b]), and a complaint that fails to meet this enhanced pleading standard is subject to dismissal (*Megaris Furs v Gimbel Bros., supra*, at 210).

The proposed amended complaint is lacking in specificity. Even more troubling is that the pleading is contradicted by the affidavit in support of the amendment. The proposed pleading intimates that defendant promised but failed to undertake a meaningful attempt to develop the anticipated software trading system by neglecting to allocate sufficient resources to that effort. However, the affidavit of plaintiff's president, Michael

Natbony, portrays a markedly different misrepresentation. It alleges, "Mr. Brandes had informed Mr. Park and me that Braddis already had the system in place when the parties entered into the Partnership Agreement." The affidavit further states that Braddis Associates failed to perform its obligations under the contract because "Braddis failed to deliver the system that it represented was already in place."

In contrast to the proposed amended complaint, the supporting affidavit suggests not that defendant misrepresented the resources that it would devote to the project, but that defendant misrepresented to plaintiff that it had already developed a trading system. Thus, even according the affidavits supplementing the proposed amended complaint their most favorable intendment (*Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146; *Dulberg v Mock*, 1 NY2d 54, 56), which is not the appropriate standard for review on a motion to amend the pleadings (*Daniels v Empire-Orr, Inc.*, 151 AD2d 370, 371), the circumstances alleged to comprise the wrong are indeterminable (CPLR 3016 [b]). The causes of action predicated on fraudulent misrepresentation—the second and third causes of action, seeking rescission and damages for breach of fiduciary duty—therefore fail to state a cause of action (*Lanzi v Brooks*, 54 AD2d 1057, 1058, *affd* 43 NY2d 778; *see also, Edison Stone Corp. v 42nd St. Dev. Corp.*, 145 AD2d 249, 257; *New York Fruit Auction Corp. v City of New York*, 81 AD2d 159, 161, *affd* 56 NY2d 1015; 60 NY Jur 2d, Fraud and Deceit, § 227).

A motion seeking leave to amend pleadings requires the proponent to allege facts legally sufficient to support its proposed pleading, and where the facts relied upon are "obviously not reliable or are insufficient", the absence of merit is "free from doubt" (*Daniels v Empire-Orr, Inc., supra*, at 371; *Mathiesen v Mead*, 168 AD2d 736, 737). Mr. Natbony's supporting affidavit raises such obvious questions as why the parties would undertake to expend nearly half a million dollars to develop a software trading system "already in place" and why they would include a recital in their agreement to the effect that there is no guaranty such a system can be developed. Given the incongruence with the misrepresentation alleged in the accompanying affidavit, the proposed pleading is clearly devoid of merit, and the motion to amend must be denied (*Megaris Furs v Gimbel Bros., supra*; *Daniels v Empire-Orr, Inc., supra*; *East Asiatic Co. v Corash, supra*; *see also, Crimmins Contr. Co. v City of New York*, 74 NY2d 166, 170 [proposed

amended defense]). Additionally, if defendant indeed possesses a viable product that it has failed to deliver for the benefit of the partnership, as Mr. Natbony alleges, the dispute concerns the right to partnership property—or "Partnership's Products" as denominated in the partnership agreement—and is appropriately the subject of an accounting (Partnership Law § 43 [1]).

■ Finally, plaintiff's claim of fraud in the inducement does no more than restate its action for breach of performance using different terminology. As in *Lanzi v Brooks* (*supra*), the alleged misrepresentation asserted in the proposed amended pleading relates to future performance. "Absent a present intention to deceive, a statement of future intentions, promises or expectations is not actionable on the grounds of fraud (*Adams v Clark*, 239 NY 403). A complaint based upon a statement of future intention must allege facts to show that the defendant, at the time the promissory representation was made, never intended to honor or act on his statement" (*Lanzi v Brooks, supra*, at 1058). "A cause of action for breach of contract cannot be converted into one for fraud by merely alleging that defendant did not intend to fulfill the contract" (*Rochelle Assocs. v Fleet Bank*, 230 AD2d 605, 606 [citing *Bencivenga & Co. v Phyfe*, 210 AD2d 22], *lv dismissed* 89 NY2d 1030).

As a general rule, to recover damages for tort in a contract matter, it is necessary that the plaintiff plead and prove "a breach of duty distinct from, or in addition to, the breach of contract" (*North Shore Bottling Co. v Schmidt & Sons*, 22 NY2d 171, 179). In *Tesoro Petroleum Corp. v Holborn Oil Co.* (108 AD2d 607, *appeal dismissed* 65 NY2d 637), the "[p]laintiff asserted that defendants' agent falsely assured plaintiff's employee that defendants would perform under the contract and that the representation was made with the intent to deceive. However, plaintiff did not allege that defendants breached any duty owed to plaintiff separate and apart from the contractual duty when they misrepresented their intent to perform as promised." This Court concluded, "A failure to perform promises of future acts is merely a breach of contract to be enforced by an action on the contract. A cause of action for fraud does not arise when the only fraud charged relates to a breach of contract" (*supra,* citing *Wegman v Dairylea Coop.*, 50 AD2d 108, 113, *lv dismissed* 38 NY2d 918; *Miller v Volk & Huxley*, 44 AD2d 810). In a similar case, the Appellate Division, Second Department, noted that the plaintiff's proposed amended pleading alleged, "essentially, that the defendants

fraudulently induced them to enter into the contract when the defendants had no intention of abiding by its terms. Accordingly, leave to amend was properly denied '[s]ince the cause of action at issue here does not allege the breach of a duty extraneous to, or distinct from the contract between the parties' " (*Courageous Syndicate v People-To-People Sports Comm.*, 141 AD2d 599, 600; *see also*, *North Shore Bottling Co. v Schmidt & Sons*, *supra*, at 179 [conspiracy to breach contract]).

■■ In the final analysis, the complaint in this matter sufficiently states causes of action for an accounting, to which plaintiff is absolutely entitled (Partnership Law § 40 [5]; §§ 41, 43, 44), and for judicial dissolution, should the parties not agree to voluntarily dissolve the partnership. Upon refusal of a demand for an accounting, a party may enlist the assistance of the courts (*Raymond v Brimberg*, 99 AD2d 988, *appeal dismissed* 64 NY2d 775 [limited partnership]; *Robert C. Arrants, M.D., P. C. v Robert S. Dell Angelo, M.D., P. C.*, 73 AD2d 633 [partnership]). The record in this matter sufficiently reflects defendant's failure to provide complete information regarding the disposition of partnership funds so as to support the cause of action (*Conroy v Cadillac Fairview Shopping Ctr. Props.*, 143 AD2d 726).

The partnership agreement provides for dissolution upon consent of the partners, and dissolution is available as a matter of right upon the bankruptcy of the partnership or any partner (Partnership Law § 62 [5]). Judicial dissolution may be decreed, *inter alia*, where there is a willful breach of the partnership agreement, where the business can only be carried on at a loss or where equitable considerations mandate (Partnership Law § 63 [1] [d], [e], [f]). As there seems to be no dispute that the partnership is bereft of operating revenue, the amended complaint, as supplemented by plaintiff's affidavits, is sufficient to state a cause of action for dissolution, irrespective of any breach of the partnership agreement by defendant (Partnership Law § 63 [1] [d]).

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered June 6, 1996, which granted defendant Braddis Associates, Inc.'s motion for summary judgment dismissing the complaint and which denied plaintiff's cross motion seeking leave to amend its complaint, to conduct discovery and to vacate the automatic stay of discovery imposed by CPLR 3214, should be modified, on the law, to the extent of denying the motion with respect to the first cause of action seeking dissolution of the partnership and remanding

the matter to Supreme Court for an accounting and, except as so modified, affirmed, without costs.

SULLIVAN, J. P., ELLERIN, NARDELLI and MAZZARELLI, JJ., concur.

Order, Supreme Court, New York County, entered June 6, 1996, modified, on the law, to the extent of denying defendant's motion for summary judgment dismissing the complaint with respect to the first cause of action seeking dissolution of the partnership and remanding the matter to Supreme Court for an accounting and, except as so modified, affirmed, without costs.