## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| SARN ENERGY LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No.: N17C-06-355 EMD CCLD |
| | ) | |
| TATRA DEFENSE VEHICLE A.S., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Submitted: July 19, 2018
Decided: October 31, 2018

*Upon SARN Energy LLC's Motion for Judgment on the Pleadings*
***DENIED***

Oderah C. Nwaeze, Esquire, Duane Morris LLP, Wilmington, Delaware, Ryan E. Borneman, Esquire, Duane Morris LLP, Philadelphia, Pennsylvania. *Attorneys for Plaintiff SARN Energy LLC.*

Philip Trainer, Jr., Esquire, Hayley Lenahan, Esquire, Ashby & Geddes, Wilmington, Delaware, Kenneth J. Pfaehler, Esquire, Dentons US LLP, Washington, D.C. *Attorneys for Defendant Tatra Defence Vehicle, a.s.*

**DAVIS, J.**

## I. INTRODUCTION

This breach of contract action is assigned to the Complex Commercial Litigation Division of the Court. Tatra Defence Vehicle a.s. ("Tatra") manufactures armored fighting vehicles called the Pandur. Tatra hired SARN Energy LLC ("SARN") to help facilitate sales of the Pandur to the Slovak Republic or Czech Republic. The parties memorialized the deal in the Defense Policy Analysis and Advisor Agreement (the "Agreement") on January 14, 2016.[1] Tatra sold 20 Pandurs to the Czech Ministry of Defense (the "Ministry"). Tatra made an initial

---

[1] Counterclaims, Ex. 2. The Defense Policy Analysis and Advisor Agreement will be cited as "Agreement § __."

payment under the Agreement. SARN demanded full payment under the Agreement. Tatra refused payment. SARN filed suit for breach of contract.

SARN filed its Motion for Judgment on the Pleadings (the "Motion") seeking judgment in its favor for the fee under the Agreement. Tatra filed the Opposition of Defendant and Counterclaim Plaintiff Tatra Defence Vehicle, A.S. to SARN Energy LLC's Motion for Judgment on the Pleadings (the "Opposition"). SARN filed its Reply Brief Supporting its Motion for Judgment on the Pleadings (the "Reply"). The Court held a hearing (the "Hearing") on July 19, 2018. At the conclusion of the Hearing, the Court took the Motion under advisement.

For the reasons set forth below, the Court **DENIES** the Motion.

## II. RELEVANT FACTS

Representatives from Tatra and SARN met in Washington, D.C. between January 10 and 13, 2015.[2] There was an additional meeting on January 14, 2016 at the Army and Navy Club in Washington, D.C.[3] Stephen Richards, Armen Agas, and Barton Marcois attended the Army and Navy Club meeting.[4] At that meeting, Mr. Richards stated that he was the chairman of SARN.[5] Mr. Agas indicated that he was deputy to the chairman of SARN.[6] Mr. Marcois held himself out at the director of SARN.[7]

Jaroslav Strnad and Michal Strnad were also present at the Army and Navy Club meeting.[8] Jaroslav Strnad was a member of the Supervisory Board of Tatra's parent company,

---

[2] Countercl. ¶ 4.
[3] *Id.* ¶ 4.
[4] *Id.* ¶ 4.
[5] *Id.* ¶ 4.
[6] *Id.* ¶ 4.
[7] *Id.* ¶ 4.
[8] *Id.* ¶ 4.

2

Czechoslovak Group ("CSG").[9]  Michal Strnad was the president of CSG.[10]  Mr. Richards, Mr. Agas, and Mr. Marcois represented to the Strnads that they "had connections and contacts with the U.S. Department of Defense, others in the American government and with the governments of the Czech Republic and Slovak Republic, and that they could use those connections and contacts to assist Tatra in achieving a sale of Pandur fighting vehicles to the Czech and Slovak Republics."[11]  The representatives from Tatra and SARN shook hands and agreed that SARN would assist Tatra in selling Pandurs.[12]

On January 14, 2016 SARN and Tatra entered into the Agreement.[13]  Although Tatra and SARN finalized and signed the Agreement on January 29, 2016, the parties dated the Agreement for the same date—January 14, 2016—as the oral agreement at the Army and Navy Club.[14] Tatra retained SARN to provide analysis and advisory services to Tatra concerning geopolitical policy matters in efforts to enter into a contract with Slovak Republic or the Czech Republic to sell Pandur armored vehicles.[15]  Specifically, the Agreement states "[SARN] will exert best efforts to advise [Tatra] on geopolitical policy matters in the sale of Pandur vehicles to the Slovak Republic and Czech Republic."[16]  Tatra agreed to pay $1 million to SARN to facilitate the sale of 20 Pandurs.[17]

---

[9] Id.
[10] Id.
[11] Id.
[12] Id. ¶ 5.
[13] Compl. ¶ 4.
[14] Countercl. ¶ 7.
[15] Compl. ¶ 5.
[16] Agreement § 2.
[17] Compl. ¶ 6.

On January 30, 2017, Tatra entered into an agreement with the Czech Ministry of Defense to sell 20 Pandur vehicles for approximately $80 million.[18]  Tatra received its initial payment from the Ministry of Defense in June 2017.[19]

On March 14, 2017, Tatra paid SARN $40,000 as partial payment for services performed under the Agreement.[20]  On April 7, 2017, SARN sent a letter demanding the remaining $960,000.[21]  Tatra did not respond to the April 7 Letter.[22]  On May 4, 2017, SARN's counsel again demanded payment from Tatra.[23]  On May 11, 2017, Tatra responded that it had not yet received the initial payment from the Ministry.[24]  On May 17, 2017, Tatra informed SARN that the Ministry would pay Tatra within one month.[25]

On June 4, 2017, SARN sent a final demand for payment.[26]  On June 16, 2017, Tatra requested documentation for tax purposes and stated that "Tatra does not dispute its payment obligations" arising from the Agreement.[27]  On June 21, 2017, SARN again requested payment under the Agreement.[28]

On June 28, 2017, SARN filed the Complaint for breach of contract.  SARN seeks $960,000–the remaining balance under the Agreement.  On March 23, 2018, Tatra filed its Answer and Amended Counterclaim (the "Counterclaims").[29]  Tatra alleges: (i) breach of contract—failure to provide tax information; (ii) breach of contract—disclosing confidential

---

[18] *Id.* ¶ 8.
[19] *Id.* ¶ 9.
[20] *Id.* ¶ 11.
[21] *Id.* ¶ 12.
[22] *Id.* ¶ 13.
[23] *Id.* ¶ 14.
[24] *Id.* ¶ 15.
[25] *Id.* ¶ 16.
[26] *Id.* ¶ 18.
[27] *Id.* ¶ 19; *see also* Countercl., Ex. 5 (dated June 15, 2017 Prague time).
[28] Compl. ¶ 23.
[29] The original Answer and Counterclaim was filed on January 16, 2018.

information; (iii) breach of the duty of good faith and fair dealing; (iv) defamation; and (v) fraud and misrepresentation. SARN has moved to dismiss the Counterclaims.

## III. PARTIES' CONTENTIONS

### A. MOTION

In the Motion, SARN argues that it satisfied all elements for a breach of contract claim. SARN argues that the Agreement is a valid and enforceable contract between the parties. Further, Tatra was required to pay SARN once Tatra received payment from the Ministry. The Agreement does not contain a proof of work provision, whereby SARN needed to show Tatra what work was done in furtherance of the sale of Pandurs to the Ministry. Further, the proof of work is not required under European Union law. Finally, Tatra owes attorneys' fees and costs under the contract for its breach.

### B. OPPOSITION

Tatra opposes the Motion. Tatra argues that the motion is improper because the pleadings have not completed because SARN failed to answer the Counterclaims when it filed the Motion. Tatra disputes that the Agreement is a valid and enforceable contract. Additionally, Tatra contends that there are several open issues as to material facts.

## IV. STANDARD OF REVIEW

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c).[30] In determining a motion under Civil Rule 12(c) for judgment on the pleadings, the Court is required

---

[30] Civil Rule 12(c) provides:
> *Motion for judgment on the pleadings* — After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Del. Super. Civ. R. 12(c).

to view the facts pleaded and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[31] The Court must take the well-pleaded facts alleged in the complaint as admitted.[32] When considering a motion under Civil Rule 12(c), the Court also assumes the truthfulness of all well-pled allegations of fact in the complaint.[33] The Court must, therefore, accord plaintiffs opposing a Rule 12(c) motion the same benefits as a plaintiff defending a motion under Civil Rule 12(b)(6).[34] The Court may grant a motion for judgment on the pleadings only when no material issue of fact exists and the movant is entitled to judgment as a matter of law.[35]

## V. DISCUSSION

### A. MOTION IS TIMELY

Tatra argues that the Motion does not comply with Superior Court Rule 12(c) because SARN filed the Motion before all pleadings were closed. In *GR BURGR, LLC*, the petitioner filed a complaint.[36] Respondent filed an answer and counterclaims.[37] Petitioner then moved to dismiss the counterclaims and moved for judgment on the pleadings on petitioner's complaint.[38] The respondent argued that the motion was premature because petitioner had failed to respond to the counterclaims.[39] The Court rejected this argument and found that the pleadings relating to the motion had closed; therefore, ruling on the motion at that time was appropriate.[40]

---

[31] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Super.), *aff'd without opinion*, 567 A.2d 419 (Del. 1989).
[32] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[33] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).
[34] *See id.*
[35] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[36] *GR BURGR, LLC*, 2017 WL 3669511, at *4 (Del. Ch. Aug. 25, 2017).
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*

SARN filed the Complaint and Tatra filed the Counterclaims. The fact that SARN had not, at the time of the Motion, filed an answer to the counterclaim portion of the Counterclaims does not make the Motion premature. In this case, the Court finds the Motion timely as all pleadings relating to the Motion have closed—*i.e.*, the Complaint and the answer portion of the Counterclaims.

## B. BREACH OF CONTRACT

To prevail on a breach of contract claim, the plaintiff must show: (1) a contractual obligation; (2) a breach of that obligation; and (3) resulting damages.[41]

A court generally gives priority to the parties' intentions contained in the four corners of the contract.[42] "In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein."[43] "The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan."[44] "When construing a contract, and unless a contrary intent appears, [courts] will give words their ordinary meaning."[45]

Where the language of the contract is plain and unambiguous, the contract must be enforced as written.[46] "If a writing is plain and clear on its face, i.e. its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent."[47] The parole evidence rule bars the admission of evidence outside the contract's four corners to vary or contradict the unambiguous language.[48]

---

[41] *See VLIW Tech., LLC v. Hewlett-Packard, Co.*, 840 A.2d 606, 612 (Del. 2003).
[42] *Paul v. Deloitte & Touche, LLP*, 974 A.2d 140, 145 (Del. 2009).
[43] *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113 (1985).
[44] *Riverbend Community, LLC v. Green Stone Engr., LLC*, 55 A.3d 330, 334 (Del. 2012) (citing *GMG Capital*, 36 A.3d at 779).
[45] *Citadel Hldg. Corp. v. Roven*, 603 A.2d 818, 824 (Del. 1992).
[46] *Lorillard Tobacco Co. v. Am. Legacy Found*, 903 A.2d 728, 740 (Del. 2006).
[47] *City Investing Co. Liquidating Tr. v. Cont'l Cas. Co.*, 624 A.2d 1191, 1198 (Del. 1993).
[48] *GMG Capital*, 36 A.3d 776 at 783.

However, "where reasonable minds could differ as to the contract's meaning, a factual dispute results and the fact-finder must consider admissible extrinsic evidence.[49]

### i. Disputes of fact in this litigation

Tatra's Opposition is heavily intertwined with the Counterclaims and the arguments made in support of breach of contract in the Opposition to the pending Motion to Dismiss. It appears that there are several disputes as to facts in this case that preclude a ruling without discovery. Specifically, Tatra argues that the disputes of fact include whether:

(1) SARN fraudulently induced Tatra to enter into the parties' agreement.

(2) SARN promised that it had connections, contacts and capabilities that it knew it did not have.

(3) The Agreement is invalid and unenforceable.

(4) The Agreement does not reflect the totality of the parties' agreements, and for that reason conspicuously lacks the customary integration clause.

(5) SARN utterly failed to perform under the Agreement.

(6) Any payment that might have been owed under the Agreement is excused because of SARN's non-performance.

(7) SARN made it impossible for Tatra to perform under Czech law by refusing to providing information about what it did under the parties' agreement.

(8) SARN refused to provide any information about what it did under the parties' agreement because it did not do anything (if it had, why wouldn't it simply provide the information?).

(9) SARN tried to bully a million-dollar payment out of Tatra to which it has no legal entitlement and that it did not earn.

(10) SARN has maliciously defamed Tatra to coerce a payment, including by planting false media reports.

(11) SARN even misrepresented the location of its office (it did not even have one).[50]

---

[49] *Id.*
[50] Opp. at 2-3.

The Court finds that, at this stage, there are disputes of fact in this case. The Court is not ruling that any or all of Tatra's disputed facts rise to the level of genuine issues as to material facts; however, there is enough at issue to preclude judgment under Civil Rule 12(c). As was discussed at the Hearing, the Court understands that Tatra made a payment under the Agreement and has, at least once, admitted that it was obligated to SARN under the Agreement. These are strong facts in favor of SARN's claims; however, the Court will not, at this stage of the case, enter judgment on the pleadings under Civil Rule 12(c).

### ii. Tatra claims that SARN breached the Agreement and/or the Agreement is not a valid and enforceable contract

Tatra also argues that the Agreement is invalid and unenforceable because SARN breached the Agreement and/or Tatra was fraudulently induced into the Agreement. In a decision that will be forthcoming soon, the Court addresses the validity (for Civil Rule 12(b) purposes) of Tatra's claims that SARN breached the Agreement. Because the Court will be allowing some of the Counterclaims to proceed, the Court finds that questions of fact exist regarding SARN's performance under the Agreement.

### iii. There is no clear breach or satisfaction of the Agreement at this stage of the litigation

SARN argues that it fully performed under the contract and did not have any obligation to provide Tatra with documentation of work in furtherance of the Agreement. SARN argues that this is true under the Agreement and is not necessary for Tatra to comply with foreign law.

First, Section 2 of the Agreement requires that SARN "will exert best efforts to advise [Tetra] on geopolitical policy matters in the sale of Pandur vehicles to the Slovak Republic and Czech Republic."[51] There is a dispute whether SARN exercised best efforts in the process.

---

[51] Agreement § 2.

Second, Section 10 of the Agreement states "Parties agree that in carrying out his duties and responsibilities under this Agreement, they will neither undertake nor cause, nor permit to be undertaken, any activity which either (i) is illegal under any laws, decrees, rules, or regulations in effect in either the United States or European Union; or (ii) would have the effect of causing either Party to be in violation of any laws, decrees, rules, or regulations in effect in either the United States or European Union."[52]

Tatra argues that SARN needs to provide proof of work in order for Tatra to meet Czech tax laws; therefore, falling under Section 10. SARN argues that it did not need to provide any proof of work. The Court believes that SARN has the better argument on this point. The proof of work for tax purposes does not appear to be a requirement for payment. Indeed, Tatra has already made a $40,000 payment to SARN in connection with the Agreement. Rather, proof of work only seems to be necessary if Tatra seeks to write off the payment to SARN as a business expense. Discovery on this point should make the matter ripe for summary judgment.

Third, Tatra argues that the Agreement lacks consideration because SARN did not need to perform in order to be paid. "It is well settled Delaware law that three elements are necessary to prove the existence of an enforceable contract: (1) intent of the parties to be bound; (2) sufficiently definite terms; and (3) consideration."[53] Consideration is "a benefit of a promisor or a detriment to a promise pursuant to the promisor's request."[54] However, Where the terms in an agreement are so vague that a court cannot determine the existence of a breach, then the parties have not reached a meeting of the minds, and a court should deny the existence of a contract."[55] The Agreement requires that SARN "exert best efforts to advise the Company on geopolitical

---

[52] Agreement § 10.
[53] *Gallagher v. E.I. DuPont De Nemours & Co.*, 2010 WL 1854131, at *3 (Del. Super. Apr. 30, 2010).
[54] *Cont'l Ins. Co. v. Rutledge & Co.*, 750 A.2d 1219, 1234 (Del. Ch. 2000).
[55] *Gallagher,* 2010 WL 1854131, at *3.

policy matters in the sale of Pandur vehicles to the Slovak Republic and Czech Republic."[56]  In

return, Tatra would pay SARN $1 million for SARN's advise.  As presented, the Agreement

does not lack consideration. [57]  As with the tax issue, focused discovery should confirm this.

Tatra also argues that SARN breached the Agreement by publicly filing confidential

information in the Complaint.  Section 8 states: "[SARN] shall not, at any time during the term

of this Agreement, in any manner, either directly or indirectly, divulge, disclose, or communicate

to any person, firm, corporation or other entity, or use for his own benefit or for the benefit of

any other person, firm, corporation or other entity, and not for the benefit of the [Tatra], any

information acquired from the [Tatra] or its affiliates, without the express prior written consent

of an authorized executive officer of the company."

Tatra argues that SARN's failure to file the Complaint under seal divulged information

about Tatra in violation of Section 8.  Tatra argues that Section 8 prohibits SARN from

disclosing *any* information about Tatra.[58]  The Court finds it premature to take any position on

this argument at this stage of the litigation.  Whether SARN breached of contract based upon

Section 8 can be addressed after discovery.

## C. ATTORNEYS' FEES

Generally, litigants are responsible for their own litigation costs.[59]  If a contract contains

a fee shifting provision, the court will make exception to the general rule.[60]  Even with a fee

---

[56] Agreement § 2.

[57] *Non-Linear Trading Co., Inc. v. Braddis Associates, Inc.*, 675 N.Y.S.2d 5, 10 (N.Y. App. Div. 1st Dept. 1998) ("It is settled that a party's promise to use best efforts to accomplish the purpose of an agreement is valid consideration that will be implied, if necessary, to avoid failure of the contract for lack of mutuality, especially where the parties have indicated the intent to be contractually bound."); *Sci. Mgt. Inst., Inc. v. Mirrer*, 278 N.Y.S.2d 58, 60 (N.Y. App. Div. 2d Dept. 1967) ("We do not find . . . that the employment contract lacked mutuality of obligation [where] Plaintiff was under  duty to use its best efforts to provide defendant with work . . . .").

[58] *See* Countercl. ¶ 23.

[59] *Mahani v. Edix Media Group, LLC*, 935 A.2d 242, 245 (Del. 2007) (citing *Chrysler Corp. v. Dann*, 223 A.2d 384, 386 (Del. 1996)

[60] *Id.* at 245 (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, *12-13 (Aug. 9, 2004)).

11

shifting provision, the Court must determine whether the requested fees are reasonable.[61] To

determine if the fees are reasonable, the court considers the factors listed in Rule 1.5.[62] The

factors include: (1) the time and labor required, the novelty and difficulty of the questions

involved, and the skill requisite to perform the legal service properly; (2) the likelihood, if

apparent to the client, that the acceptance of the particular employment will preclude other

employment by the lawyer; (3) the fee customarily charged in the locality for similar legal

services; (4) the amount involved and the results obtained; (5) the time limitations imposed by

the client or by the circumstances; (6) the nature and length of the professional relationship with

the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the

services; and (8) whether the fee is fixed or contingent.[63]

> In *Boeing*,[64] this Court found

> . . . the Thomas Affidavit very helpful to the overall determination of
> reasonableness. Spirit reviewed, approved and paid its attorneys' fees and costs on
> a regular basis. Ms. Thomas stated that these fees and costs were "reasonable."
> Absent some demonstration to the contrary, the Court is not going to second guess
> a for-profit business that reviews its legal bills on a regular basis, makes
> determinations that the fees and costs are reasonable and then pays the bills.
> Especially when Spirit had no guarantee from the outset that the attorneys' fees and
> costs would be reimbursed under the APA.[65]

In this case, the affidavit in support of the fee petition does not include any billing

statements or time reports. Moreover, the Court does not believe that an award of attorneys' fees

is support by the terms of the Agreement. The Agreement does not have a section that provides

that one party is entitled to attorneys' fees in connection with any enforcement action brought

---

[61] *Id.* (citing Del. Lawyer's Rules of Prof'l Conduct R. 1.5(a)(1)(a)).
[62] *Id.* (citing Del. Lawyer's Rules of Prof'l Conduct R. 1.5(a)(1)).
[63] Del. Lawyer's Rules of Prof'l Conduct R. 1.5(a)(1).
[64] *Boeing Co. v. Spirit Aerosystems, Inc.*, 2017 WL 6021423, at *5 (Del. Super. Dec. 5, 2017).
[65] *See Danenberg v. Fitracks, Inc.*, 58 A.3d 991, 997 (Del. Ch. 2012) (quoting *Aveta*, 2010 WL 3221823, at *6) ("If a party cannot be certain that it will be able to shift expenses at the time the expenses are incurred, the prospect that the party will bear its own expenses provides 'sufficient incentive to monitor its counsel's work and ensure that counsel [does] not engage in excessive or unnecessary efforts.'").

12

under the Agreement. SARN contends that Section 11 of the Agreement provides support for a claim of attorneys' fees. However, Section 11 is the indemnification section the Agreement and, while it does mention "attorneys' fees," the section seems to address indemnification and not reimbursement. Given the decision here, the Court finds the claim for fees to be premature.

## VI. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motions.

**IT IS SO ORDERED**

*/s/ Eric M. Davis*
**Eric M. Davis, Judge**

cc:    File&ServeXpress

13