[702 NYS2d 237]

Timberline Development L. L. C., Appellant, v Mark J.
Kronman et al., Respondents.

First Department, January 11, 2000

### APPEARANCES OF COUNSEL

*Darlene Fairman* of counsel, New York City (*Susan T. Dwyer* on the brief; *Herrick, Feinstein, L. L. P.,* attorneys), for appellant.

*Richard B. Cooper* of counsel, New York City (*Cooper, Brown & Behrle, P. C.,* attorneys), for respondents.

### OPINION OF THE COURT

RUBIN, J.

This dispute arises out of the bankruptcy of Liberty Warehouse Associates Limited Partnership, which filed for reorganization under chapter 11 of the Bankruptcy Code (11 USC) in July 1996. Defendants are all limited partners, and defendant Mark J. Kronman is a managing partner of the debtor's general partner. At issue is whether an interest in the premises owned by the debtor, which sold at auction for $16,748,190, should instead have been conveyed to plaintiff at a contract price of $10,064,640.

In early 1997, the Ad Hoc Committee of Limited Partners was formed by defendant Kronman, which was authorized by defendant limited partners to act on their behalf. In November 1997, plaintiff Timberline Development L. L. C. entered into an agreement with the Committee to purchase an undivided 78.63% interest in the premises comprising the single asset of the limited partnership for the sum of $9,042,450. The remaining 21.37% represents the interest to be held by a faction of the limited partners opposed to the liquidation. The sale price was calculated on a valuation of $11,500,000 for the entire premises. Section 6.2 of the purchase agreement expressly provides that should the Bankruptcy Court approve a higher and better offer for the property, the limited partnership, as seller, will pay a "Break Up Fee" of $250,000 plus the plaintiff's reasonable costs. The provision also recites, "Seller shall use reasonable efforts to obtain approval from the Bankruptcy Court of the private sale to Purchaser contemplated hereby."

The transcript of proceedings conducted in the United States Bankruptcy Court for the Southern District of New York on March 25, 1998 indicates that an offer of some $13,000,000 was expected to be made for the property. By stipulation dated April 2, 1998, the purchase agreement was amended to provide for a sale price of $10,064,640, based upon a valuation of $12,800,000 for the entire premises. The stipulation, signed by plaintiff, the managing partners on behalf of the debtor and the Ad Hoc Committee, reiterated the promise to "use reasonable efforts to obtain Bankruptcy Court approval" of the private sale contemplated by the purchase agreement.

By order dated April 8, 1998, the Bankruptcy Court (James L. Garrity, J.) directed a public sale, to be conducted on April 30, 1998, which plaintiff appealed. At the conclusion of the auction held on that date, the Bankruptcy Court approved a bid of $20,300,000 for the property, including $16,748,190 for the interest subject to the purchase agreement. Motions seeking to stay the closing of the auction sale were denied by the Bankruptcy Court, the Federal District Court for the Southern District of New York and the Second Circuit Court of Appeals.

Plaintiff Timberline thereupon commenced this action for breach of contract on May 27, 1998. The complaint charges that defendants breached the purchase agreement by urging the Bankruptcy Court to direct a public sale rather than approve the private sale to plaintiff. Defendants moved to dismiss the complaint on the grounds of collateral estoppel and comity. Supreme Court granted the motion, holding that the issue of defendants' breach has been decided by the Federal courts, thereby barring this action. In view of this disposition, the court did not reach the issue of comity.

The parties' arguments on appeal are directed to the estoppel issue. "Application of the doctrine of collateral estoppel requires 'that an issue in the present proceeding be identical to that necessarily decided in a prior proceeding, and that in the prior proceeding the party against whom preclusion is sought was accorded a full and fair opportunity to contest the issue' (*Allied Chem. v Niagara Mohawk Power Corp.*, 72 NY2d 271, 276, *cert denied* 488 US 1005; *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65)" (*Adam v Cutner & Rathkopf*, 238 AD2d 234, 242). Defendants contend that, as Supreme Court found, the record before the Bankruptcy Court as a whole indicates that the question of their "reasonable efforts" to bring about the private sale to plaintiff was duly considered, the court concluding that the remedy provided by the purchase

agreement was payment of the breakup fee. Plaintiff, however, points out that because none of the parties are debtors, the Bankruptcy Court expressed grave doubt that it even had jurisdiction to consider their contract dispute. Plaintiff maintains that the Bankruptcy Court's determination was limited to the question of whether it had the discretion to direct a public sale of the property and did not reach the issue of defendants' breach of the purchase agreement.

■ From the transcript of proceedings before the Bankruptcy Court contained in the record, it is clear that defendants' liability to plaintiff was not decided and that the Bankruptcy Court was of the opinion that it lacked jurisdiction over the matter. It is also clear that defendants' representatives alternately supported and opposed the private sale to plaintiff, leading the court to remark that for "the Ad Hoc Committee to say it flip-flopped on that is kind of an understatement." However, to decide the limited question before it, the Bankruptcy Court necessarily decided that the purchase agreement was subject to higher and better offers and that sale to a higher bidder activated the breakup fee provision of the purchase agreement. As attorneys for Timberline represented its interests before the Bankruptcy Court, plaintiff was afforded the opportunity to fully and fairly litigate this issue, and collateral estoppel bars its relitigation in State court.

The Bankruptcy Court's finding that the sale is subject to competing bids pursuant to section 6.2 of the purchase agreement is not dispositive of the contract dispute, however. Two questions remain with respect to its construction. The first is whether the contractual provision requiring defendants to use "reasonable efforts" on behalf of the private sale is sufficiently definite to permit enforcement. The second concerns the effect of the breakup fee provision in which the reasonable efforts clause is contained.

■ The requirement to employ reasonable efforts or "best efforts", as it is generally expressed, in the performance of contractual obligations is deemed to be implicit in every agreement (*Wood v Duff-Gordon*, 222 NY 88, 92). However, to be enforceable, there must be objective criteria against which a party's efforts can be measured, whether the requirement is deemed to be implicit (*Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 270) or explicit (*Non-Linear Trading Co. v Braddis Assocs.*, 243 AD2d 107, 113; *Cross Props. v Brook Realty Co.*, 76 AD2d 445, 454). The difficulty in assessing reasonableness in this case is that defendants' efforts are

proposed to be directed at inducing a court to act with respect to a matter it determined to be within its exclusive discretion. The purchase agreement being subject to court approval, disposition of the subject property by private sale would have required convincing the Bankruptcy Court to sell the property to plaintiff rather than solicit a successful bid at auction, which proved to be half again as much as the contract price.

It is axiomatic that the function of Bankruptcy Court is to maximize the estate in bankruptcy for the benefit of the debtor and its creditors (*see*, *Matter of Harwald Co.*, 497 F2d 443, 444). Significantly, the proposed sale price under the purchase agreement was revised upward during the pendency of the bankruptcy proceedings when it was anticipated that $13,000,000 would be offered for the property. Given the boom in the real estate market during the last few years, whether any amount of advocacy on behalf of the private sale would have been sufficient to induce the court to approve the purchase agreement is, at best, surmise. Moreover, from the perspective of any court supervising the disposition of property (as in a mortgage foreclosure, for example), the prudent course is to conduct a public auction and require all interested persons to submit competitive bids. This Court will not speculate as to what circumstances might have induced the Bankruptcy Court to depart from standard practice and approve a private sale at a predetermined price. It is sufficient that, under the particular circumstances confronting it, the Bankruptcy Court did not regard the proposed sale to plaintiff as a sound exercise of its discretion.

In the abstract, the question of the extent of the "reasonable effort" required from defendants to consummate the private sale is problematical. In the context of the entire provision, however, it presents a straightforward question of law. Section 6.2 of the purchase agreement expresses the condition that "if * * * the Bankruptcy Court determines that the sale pursuant to this Agreement shall be subject to higher and better offers * * * Seller shall obtain an order * * * which shall provide that if * * * the Bankruptcy Court approves a higher and better offer * * * Seller shall pay to Purchaser * * * $250,000.00 (the 'Break Up Fee'), plus * * * reasonable costs not to exceed $50,000 * * * In such event, neither Seller nor Purchaser shall have any further obligation or liability to the other party hereunder * * *. Seller shall use reasonable efforts to obtain approval from the Bankruptcy Court of the private sale to Purchaser contemplated hereby." In ruling on plaintiff's ap-

plication to stay sale of the premises, the Bankruptcy Court held that this provision "plainly vests us with the unfettered discretion to determine that the sale pursuant to the agreement shall be subject to higher and better offers, notwithstanding that the joint plan and agreement speaks of a private sale * * * Moreover, Timberline made provisions for the possibility that we would direct that the sale be subject to higher and better offers by securing for itself, in section 6.2, a break-up fee."

As the Bankruptcy Court suggested, this clause provides for liquidated damages in the event the premises were offered for sale at auction. To go forward with this action, plaintiff must show not only that defendants' efforts to secure a private sale of the premises were not "reasonable" under some objective criteria but also that defendants' default of this obligation removes it from the operation of the liquidated damages clause.

Plaintiff urges the Court to construe the reasonable efforts provision as an obligation distinct from and in addition to the liquidated damages clause. However, the provision, limiting plaintiff's recovery to $250,000 plus expenses, contains no exception for the particular circumstances confronting the parties (cf., Metropolitan Life Ins. Co. v Noble Lowndes Intl., 192 AD2d 83, affd 84 NY2d 430). Furthermore, had the parties intended this provision to be something other than an exclusive remedy, it would have been a simple matter to provide language to the effect that "this remedy shall be in addition to any other remedy plaintiff may have against the seller, including an action for breach of contract." In fact, the provision recites that, in the event the court entertained competing bids, "neither Seller nor Purchaser shall have any further obligation or liability to the other party hereunder." Therefore, even if plaintiff could establish that the failure of the anticipated private sale was entirely attributable to defendants' lack of effort, plaintiff has not demonstrated that the liquidated damages provision would thereby be rendered inapplicable.

Given the uncertainty regarding the criteria to be applied to the "reasonable efforts" requirement and the explicit provision for liquidated damages in the event the Bankruptcy Court accepted a higher bid for the property, plaintiff is limited to the remedy provided in section 6.2 of the contract.

Accordingly, the judgment of the Supreme Court, New York County (Barry Cozier, J.), entered February 4, 1999, which dismissed plaintiff's complaint on the ground of collateral estoppel, should be affirmed, with costs. The appeal from the order of the same court and Justice, entered January 26, 1999,

should be dismissed, without costs, as subsumed in the appeal from the judgment.

ROSENBERGER, J. P., TOM, MAZZARELLI and LERNER, JJ., concur.

Judgment, Supreme Court, New York County, entered February 4, 1999, affirmed, with costs. Appeal from order, same court, entered January 26, 1999, dismissed, without costs, as subsumed in the appeal from the judgment.