■ P. SHERMAN BROWN et al., Appellants, v BUSINESS LEADERSHIP GROUP et al., Respondents, et al., Defendant. [868 NYS2d 55]—

Plaintiff P. Sherman Brown entered into a licensing agreement with defendant Dale Carnegie & Associates, Inc. (DCA) in 1990 for the right to use the DCA name, materials and courses at training centers in two defined territories in England. The agreement provided that upon its expiration or termination Brown would be entitled to a continuing license fee (CLF) from his successor licensee. When Brown's agreement expired, in 1998, his territories were assigned to two different individuals; in 2001, defendant Business Leadership Group (BLG) and one of those individuals formed a joint venture that acquired the territories. In May 2003, BLG alone entered into a license agreement with DCA for Brown's former territories and operated them until August 2005, when because of BLG's poor performance, DCA had them transferred back to itself. DCA assigned Brown's former territories to another licensee in December 2006.

Brown complains of DCA's selection of BLG as his successor and of the 15-month delay in selecting BLG's successor, which resulted in the partial loss of his CLF payments. However, contrary to his contention, the evidence fails to raise an inference that DCA acted in negligent disregard of his rights, thereby breaching the implied covenant of good faith and fair dealing (see generally Dalton v Educational Testing Serv., 87 NY2d 384, 389 [1995]; Pernet v Peabody Eng'g Corp., 20 AD2d 781 [1964]).

Nor does the evidence raise an inference that in operating the business BLG failed to use its "best efforts," pursuant to the 2003 agreement between DCA and BLG, in which Brown's right to CLF payments is included, since the agreement's "best ef-

forts" clause does not contain "objective criteria against which [BLG's] efforts can be measured" (*Timberline Dev. v Kronman*, 263 AD2d 175, 178 [2000]; *Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 113 [1998]). The territory revenue potential (TRP), the amount the business would be expected to generate in the territory, and the guaranteed minimum production (GMP), by which DCA mandated certain annual gross revenues, do not constitute such objective criteria. Moreover, these provisions regulating DCA's required revenues so as to generate royalties for the license were entirely between DCA and BLG. If Brown benefitted from them at all, it was only incidentally, since BLG's efforts to meet these standards would generate revenue from which his CLF would be calculated. But Brown had no right to enforce these standards, particularly the GMP. In any event, a sponsor could, despite its best efforts, fail to meet the TRP or GMP because of market forces (*see Ohanian v Avis Rent A Car Sys., Inc.*, 779 F2d 101, 108 [2d Cir 1985]).

Brown's contention that his CLF must be calculated as a percentage of the "aggregate income" generated from all the territories operated by BLG, not only those that formerly belonged to him, depends on an interpretation of the term "aggregate income" that is unreasonable, reading his 1990 agreement with DCA and BLG's 2003 agreement with DCA as a whole (*see Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 438 [1994]; *Matter of Lipper Holdings v Trident Holdings*, 1 AD3d 170 [2003]). Indeed, by Brown's own admission, the CLF was intended to compensate a former licensee for the business and goodwill it had built up and for its inability under the agreement to assign or sell the business itself.

Absent liability to Brown on BLG's part, the individual defendants-respondents, who guaranteed the 2003 agreement between BLG and DCA, cannot be held liable. In any event, a personal guarantee "is to be interpreted in the strictest manner" (*White Rose Food v Saleh*, 99 NY2d 589, 591 [2003]; *see also Levine v Segal*, 256 AD2d 199 [1998]). The guarantee agreements here stated that the guarantees "shall inure to the benefit of DC & A, its successors and assigns." Since DCA was expressly not obligated to pay any portion of the CLF, neither may the guarantors be so obligated. Brown's interpretation, that the absence of the word "only" in the above-quoted statement means that the guarantees might also inure to his benefit, would render the statement meaningless or superfluous (*see RM 14 FK Corp. v Bank One Trust Co., N.A.*, 37 AD3d 272, 274 [2007]; *East 41st St. Assoc. v 18 E. 42nd St.*, 248 AD2d 112, 114 [1998]). Concur—Mazzarelli, J.P., Saxe, Catterson, Renwick and

Freedman, JJ. [*See* 17 Misc 3d 1139(A), 2007 NY Slip Op 52340(U).]