OPINION OF THE COURT
Eileen Bransten, J.
Motion sequence Nos. 001 and 003 are consolidated for disposition. In motion sequence No. 001, plaintiffs seek a preliminary injunction, a mandatory injunction and a permanent injunction. Defendant opposes.
In motion sequence No. 003, defendant moves to dismiss the complaint. Plaintiffs oppose.
I. Background
Plaintiffs own property located at 319, 321, 323 and 325 10th Avenue and 507, 509, 511, 513 and 515 West 28th Street in Manhattan, New York (the property). (Complaint If 14.) Plaintiffs plan to develop a mixed use residential and retail complex on the property (the project). (Id. 1HI1, 16.)
Defendant owns real estate adjacent to plaintiffs’ property. (Id. 1Í15.) Defendant also has unused air rights for its property (the air rights). Plaintiffs needed additional air rights to build the project in compliance with New York City zoning regulations. (Id. lili 15-17.) Consequently, after extensive negotiations, plaintiffs contracted in March of this year to purchase defendant’s air rights for $4.6 million (the contract). (Id. 1118.) As per the terms of the contract, plaintiffs placed a $460,000 down payment into escrow. (Id. It 19.)
A. The Contract’s Terms
The contract provides that the sale of the air rights will close, at the latest, on December 26, 2012. (Id.) Before the sale can close, defendant must obtain a “Waiver and Subordination” from JPMorgan Chase (JPMC), which holds the mortgage on defendant’s property (the waiver). Defendant must obtain the waiver within 30 days of the execution of the contract (the waiver contingency period). (Id. 1Í1Í 6-7.) The contract requires defendant to use its “best efforts” to obtain the waiver. (Id. 1i 7.) If defendant’s attempt to obtain the waiver is unsuccessful, the contract provides that plaintiffs may themselves seek the *526 waiver from JPMC. (Id.) The contract further states that plaintiffs may extend the waiver contingency period as needed to obtain the waiver.
Under paragraph 8 (C) (ii) of the contract, plaintiffs may unilaterally extend the closing date “from time to time, ... in [their] sole discretion in which case the Closing, at [plaintiffs’] election, shall be moved back day for day by the number of days” necessary for the plaintiffs to obtain the waiver. (Affirmation of Gregg L. Weiner, exhibit B [the contract], 1Í 8 [C] [ii].)
B. Defendant’s Failure to Obtain the Waiver
Plaintiffs claim that defendant waited several weeks after executing the contract to submit an application to JPMC to obtain the waiver. (Third affirmation of Gregg L. Weiner, exhibit A [Lalezarian aff], at 3.) Plaintiffs allege that defendant further complicated the process of obtaining the waiver by submitting a “sloppy,” “poorly-prepared” waiver application to JPMC. (Id.)
Defendant claims that it promptly attempted to obtain the waiver after entering into the contract. (Mem of law in support of the defendant’s motion to dismiss the complaint [defendant’s mem] at 4.) Defendant states that, on May 11, 2012, over a month after the parties entered into the contract, JPMC sent defendant a proposal requiring defendant to pay a prepayment penalty of $1,800,000 in exchange for the waiver. (Affirmation of Steven Landy in support of defendant’s order to show cause to dismiss the complaint [Landy affirmation], exhibit H, at 6.) Defendant rejected JPMC’s proposal. (Defendant’s mem at 4.)
Plaintiffs assert that, after rejecting JPMC’s offer, defendant interfered with plaintiffs’ ability to exercise their contractual right to attempt to obtain the waiver by instructing JPMC not to communicate with plaintiffs. (Complaint 1i 27.)
On May 15, 2012, defendant’s counsel informed plaintiffs’ counsel that defendant had “been unable to attain the waiver from the bank .... Unless [plaintiffs are] able to obtain same, please advise how to return the down payment.” (Landy affirmation, exhibit J, at 1.)
On June 5, 2012, defendant’s counsel informed plaintiffs’ counsel that “[n] either party has been [ ]able to obtain the waiver. Please be advised the [defendant] is terminating this transaction.” (Landy affirmation, exhibit K, at 3.)
Plaintiffs’ counsel sent defendant’s counsel a series of emails explaining that plaintiffs had extended the waiver contingency period, and confirming that plaintiffs planned to continue to *527 work towards obtaining the waiver. (Id.) Defendant insisted that “[t]his deal is over.” (Id. at 1.)
On June 13, 2012, defendant sent plaintiffs a “Notice of Termination of Purchase and Sale Agreement” (the termination letter). Defendant contends this notice terminated the contract. (Landy affirmation, exhibit L, at 1.)
On June 15, 2012, defendant followed up the termination letter by sending a letter to JPMC stating that defendant had “terminated its purchase and sale agreement with [plaintiffs].” (Landy affirmation, exhibit M, at 1.) Defendant further informed JPMC that “it is [defendant’s] position that [JPMC was] under no obligation to continue discussing the matter or to engage in further negotiations” with plaintiffs regarding the waiver. (Id.)
Plaintiffs brought the instant action on June 20, 2012. Plaintiffs bring causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing. Plaintiff also brings causes of action for a declaratory judgment, a preliminary injunction and a permanent injunction. Plaintiffs seek specific performance of the contract in addition to compensatory damages.
II. Standard of Law
“On a motion to dismiss pursuant to CPLR 3211, the pleading is to be afforded a liberal construction.” (Leon v Martinez, 84 NY2d 83, 87 [1994].) The court accepts the facts as alleged in the nonmoving party’s pleading as true and accords the non-moving party the benefit of every possible favorable inference. (Id.) “[A] court may freely consider affidavits submitted by the plaintiff to remedy any defects in the complaint and ‘the criterion is whether the proponent of the pleading has a cause of action, not whether he has stated one.’ ” (Id. at 88 [citations omitted].)
III. Analysis
A. Defendant’s Motion to Dismiss the Complaint
1. Breach of Contract
a. The “Best Efforts” Clause
Defendant first moves to dismiss plaintiffs’ claim for breach of contract on the grounds that the contract is void. Defendant argues that the contract’s “best efforts” clause is invalid because it “contains no objective criteria or guidelines against *528 which Defendant’s efforts can be measured.” (Defendant’s mem at 12.) Consequently, reasons defendant, “the Contract is unenforceable on the ground of uncertainty and vagueness.” (Id.)
As Judge Friendly commented in Bloor v Falstaff Brewing Corp. (601 F2d 609, 613 n 7 [2d Cir 1979]), the law in New York concerning best efforts clauses is “far from clear.” Since Bloor, the Appellate Divisions have continued to issue conflicting rulings on whether contracts containing best efforts clauses must also include “objective criteria” for those clauses to be enforceable.
The Court of Appeals has not directly spoken on the issue of best efforts clauses since its 1972 decision in Van Valkenburgh, Nooger & Neville v Hayden Publ. Co. (30 NY2d 34 [1972]). In Van Valkenburgh, the Court of Appeals enforced a contract’s best efforts clause despite the contract’s lack of objective criteria by which to measure the breaching party’s behavior.
Notwithstanding the ruling in Van Valkenburgh, the First and Second Departments of the Appellate Division have, at times, held that best efforts clauses are only enforceable when accompanied by “objective criteria” or “clear guidelines” for their enforcement. (See Timberline Dev. v Kronman, 263 AD2d 175, 178-180 [1st Dept 2000]; see also Strauss Paper Co. v RSA Exec. Search, 260 AD2d 570, 571 [2d Dept 1999].) First Department cases are unclear whether this “objective criteria” standard applies to both express best efforts clauses as well as implied best efforts clauses. The cases are also unclear whether the “objective criteria” need be included in the contract containing the implied or express best efforts clauses, or whether the “objective criteria” could be established from the circumstances of the case.
The First Department established the “objective criteria” standard in Timberline Dev. (263 AD2d at 178-180). In Timberline Dev., the First Department held that
“[t]he requirement to employ reasonable efforts or ‘best efforts’, as it is generally expressed, in the performance of contractual obligations is deemed to be implicit in every agreement. However, to be enforceable, there must be objective criteria against which a party’s efforts can be measured, whether the requirement is deemed to be implicit.” (Timberline Dev., 263 AD2d at 178 [citations omitted].)
In support of its holding, the Timberline Dev. court cited NonLinear Trading Co. v Braddis Assoc. (243 AD2d 107 [1st Dept *529 1998]). In Non-Linear Trading, the court expressly reversed a trial court decision invalidating as vague a contract containing a best efforts clause. The best efforts provision in Non-Linear Trading applied to only one of the two parties involved. The contract contained no objective criteria by which to measure the parties’ efforts. The trial court held that the contract was unenforceable because, “[t]o be enforceable, a contract which expressly requires a party to apply its best efforts necessitates a clear set of guidelines against which to measure the party’s best efforts.” (Non-Linear Trading, 243 AD2d at 113.) Otherwise, reasoned the trial court, “a court could not intervene without imposing its own conception of what the parties should or might have undertaken rather than confining itself to a bargain to which they have mutually committed themselves.” (Id.)
The Non-Linear Trading court rejected the trial court’s reasoning. The First Department held that the parties clearly intended to be bound by their contract, and that the contract was sufficiently definite. The court explained that “[i]t is settled that a party’s promise to use best efforts to accomplish the purpose of an agreement is valid consideration.” (Id. at 114.)
The court found that because only one party to the contract had promised to use its best efforts, an obligation was implied upon the other party to use its best efforts “to avoid failure of the contract for lack of mutuality.” (Id.) The court held that the implied best efforts clause was enforceable on the grounds that “where it is clear from the language of an agreement that the parties intended to be bound and there exists an objective method for supplying a missing term, the court should endeavor to hold the parties to their bargain.” (Id.) Consequently, pursuant to well-established rules of contractual interpretation, a court must have some objective means of enforcing an implied best efforts term.
Regardless of whether a best efforts clause is express or implied, “[t]he law . . . does not require that ‘best efforts’ criteria be defined by the contract.... If external standards or circumstances impart a reasonable degree of certainty to the meaning of the phrase ‘best efforts,’ the clause can be enforced.” (McDarren v Marvel Entertainment Group, Int’l, 1995 WL 214482, *4, 1995 US Dist LEXIS 4649, *12-13 [SD NY, Apr. 7, 1995, 09 Civ 0910], citing Proteus Books Ltd. v Cherry Lane Music Co., Inc., 873 F2d 502 [2d Cir 1989].)
A court must interpret and give effect to an express best efforts clause just as it would any other contractual provision. *530 The court’s “role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract. If that intent is discernible from the plain meaning of the language of the contract, there is no need to look further.” (Evans v Famous Music Corp., 1 NY3d 452, 458 [2004].) If the contract is ambiguous, the court “turn[s] to extrinsic evidence for guidance as to which interpretation should prevail.” (Id. at 459.)
“[A] best efforts clause imposes an obligation to act with good faith in light of one’s own capabilities. Best efforts requires that plaintiffs pursue all reasonable methods . . . , and whether such obligation has been fulfilled will almost invariably, . . . involve a question of fact. Accordingly, the precise meaning of [a] best efforts provision [and whether the provision is breached] are factual issues that cannot be resolved on the face of the complaint.” (Robin Bay Assoc., LLC v Merrill Lynch & Co., 2008 WL 2275902, *7, 2008 US Dist LEXIS 43679, *19-20 [SD NY, June 3, 2008, 07 Civ 376] [internal quotation marks and citations omitted].)
Furthermore, defendant’s interpretation of First Department law regarding best efforts clauses would invalidate innumerable contracts calling for parties to use their best efforts, even if the parties clearly intended to be contractually bound. For example, contracts for the sale of property frequently require buyers to use their “best efforts” to obtain a mortgage. All of these contracts would be invalid under defendant’s reading of the law. When a contract “expresses the intention of the parties to be bound[,] ... a finding that a contract fails for indefiniteness is at best a last resort.” (Non-Linear Trading, 243 AD2d at 114 [internal quotation marks omitted].)
b. The Rule against Perpetuities
Defendant next moves to dismiss plaintiffs’ breach of contract claim on the grounds that the contract is invalid under EPTL 9-1.1 (b), otherwise known as the “rule against perpetuities.” Defendant claims that the contract is, in effect, an option contract that gives plaintiffs the right to purchase defendant’s air rights after the expiration of the waiver contingency period. Defendant argues that plaintiffs may unilaterally and indefinitely extend the waiver contingency period. (Defendant’s mem at 15; see also contract 1! 8 [C] [ii].) Plaintiffs may postpone the closing “day for day by the number[ ] of days” by which they *531 extend the waiver contingency period. (Id.) Defendant posits, therefore, that the contract does not require plaintiffs’ interest in defendant’s air rights to vest within EPTL 9-1.1 (b)’s 21-year vesting period.
Plaintiffs assert that the parties clearly intended for their interest in the air rights to vest as soon as possible. Plaintiffs point to the fact that they have expended significant resources planning and obtaining approval for the project in reliance on the contract. Plaintiffs further contend that they need to finalize the purchase of defendant’s air rights as soon as possible to obtain certain financing for the project.
EPTL 9-1.1 (b) states that “[n]o estate in property shall be valid unless it must vest, if at all, not later than twenty-one years after one or more lives in being at the creation of the estate . . . .” “Although the statutory period is lives in being plus 21 years, . . . [when] the parties to the agreement [are] corporations and, inasmuch as no measuring life or lives [are] stated in the instruments, the permissible period is 21 years.” (Metropolitan Transp. Auth. v Bruken Realty Corp., 67 NY2d 156, 161 [1986].) Commercial options to purchase real estate are subject to EPTL 9-1.1 (b). (Symphony Space v Pergola Props., 88 NY2d 466, 477-478 [1996].)
EPTL 9-1.3 (d), also called the “savings clause,” provides that “[w]here the duration or vesting of an estate is contingent upon . . . the occurrence of any specified contingency, it shall be presumed that the creator of such estate intended such contingency to occur, if at all, within twenty-one years from the effective date of the instrument creating such estate.”
As the court explained in Scutti Enters. v Wackerman Guchone Custom Bldrs. (153 AD2d 83, 88-89 [4th Dept 1989]):
“[b]y enacting EPTL 9-1.3 (d), the Legislature intended to prevent, wherever possible, inadvertent violations of the rule [against perpetuities]. Subdivision (d) in particular is designed to prevent the problem, present in this case, created by an instrument’s reference to a specified event which ordinarily would take a short time to occur but which theoretically could take more than 21 years.” (Id. at 89.)
Much like the contract at issue in Scutti, the contract between the parties:
“could be construed to violate the rule [against perpetuities] because it is theoretically possible that *532 plaintiff could exercise the option more than 21 years after its creation .... Nonetheless, the saving statute requires that we construe the option in such a way as to avoid invalidating it. . . . [T]he circumstances of this case make clear that the saving statute applies and that the parties intended that the contingency would occur within 21 years.” {Id. at 88-89.)
The court will apply the savings statute to avoid invalidating the contract because the circumstances and the contract itself indicate that the parties intended to obtain the waiver and close on the sale of defendant’s air rights within 21 years.
Defendant’s motion to dismiss on the grounds that the contract violates the rule against perpetuities is, thus, denied.
c. Remaining Arguments
Defendant contends that the court should dismiss plaintiffs’ breach of contract claim because plaintiffs failed to adequately plead that they had performed on the contract.
Plaintiffs, however, claimed that they performed all of their obligations under the contract, which included placing into escrow a $460,000 down payment, until defendant sent the termination letter.
Defendant further argues that plaintiffs’ “admissions undermine the allegation in the Complaint that Defendant interfered with their right to contact or communicate with [JPMC].” (Defendant’s mem at 17.) Defendant’s argument calls for factual determinations which are inappropriate on a motion to dismiss.
Defendant’s motion to dismiss plaintiffs’ claim for breach of contract is therefore denied.
2, Breach of the Implied Covenant of Good Faith and Fair Dealing
Defendant moves to dismiss plaintiffs’ cause of action for breach of the implied covenant of good faith and fair dealing as duplicative of plaintiffs’ breach of contract claim.
A cause of action for breach of the implied covenant of good faith and fair dealing is properly dismissed as duplicative of a breach of contract claim when both “arise from the same facts.” (MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 297 [1st Dept 2011].)
The facts on which plaintiffs premise their cause of action for breach of the implied covenant of good faith and fair dealing are *533 substantively identical to the facts underlying their claim for breach of contract.*
Defendant’s motion to dismiss plaintiffs’ claim for breach of the implied covenant of good faith and fair dealing is, therefore, granted and plaintiffs’ claim is dismissed. (Id.)
3. Declaratory Judgment
Plaintiffs seek a declaratory judgment that “(a) [defendant’s] termination of the Contract is improper, null and void, and (b) the Contract remains in full force and effect.” (Complaint 1i 35.)
Defendant asserts that plaintiffs may not seek a declaratory judgment because plaintiffs have an adequate alternative remedy at law and because “the cause of action is pled in an entirely conclusory fashion.” (Defendant’s mem at 6.)
“Declaratory judgments are a means to establish the respective legal rights of the parties to a justiciable controversy. The general purpose of the declaratory judgment is to serve some practical end in quieting or stabilizing an uncertain or disputed jural relation either as to present or prospective obligations.” (Thome v Alexander & Louisa Calder Found., 70 AD3d 88, 99 [1st Dept 2009] [internal quotation marks and citations omitted].)
In M&A Oasis v MTM Assoc., L.P. (307 AD2d 872 [1st Dept 2003]), the court held that plaintiffs properly asserted a claim for a declaratory judgment to enforce a purported contractual right of first refusal to purchase property. The court explained that a claim for a declaratory judgment was appropriate because it would “have the immediate and practical effect of influencing [defendant(’s)] conduct.” (Id. at 872 [internal quotation marks omitted].) Similarly, in this case, plaintiffs seek a declaratory judgment to establish the legal rights of the parties under the contract for the purpose of preventing defendant from selling or otherwise encumbering defendant’s unused property rights. Consequently, a claim for a declaratory judgment is appropriate. (Thome, 70 AJD3d at 99.)
Defendant additionally claims that plaintiffs’ cause of action for a declaratory judgment is “conclusory.”
Under the liberal pleading requirements of CPLR 3211, the court must consider “whether the proponent of the pleading *534 has a cause of action, not whether he has stated one.” (Leon v Martinez, 84 NY2d 83, 88 [1994].) The facts enumerated in the complaint sufficiently establish a cause of action for a declaratory judgment.
Defendant’s motion to dismiss plaintiffs’ claim for a declaratory judgment is denied.
4. Specific Performance
Defendant moves to dismiss plaintiffs’ cause of action for specific performance. Defendant asserts that specific performance is a form of relief, not an independent claim. Defendant further argues that air rights are fungible, and, therefore, specific performance is not an appropriate remedy in this case.
“[S]pecific performance is an equitable remedy for a breach of contract, rather than a separate cause of action.” (Cho v 401-403 57th St. Realty Corp., 300 AD2d 174, 175 [1st Dept 2002].)
Plaintiffs’ claim for specific performance is accordingly dismissed.
Plaintiffs may, however, seek specific performance as a remedy. The contract expressly provides that plaintiffs may seek specific performance. (Contract 1f 15 [B].) Furthermore,
“specific performance is appropriate when money damages would be inadequate to protect the expectation interest of the injured party .... Traditionally, specific performance has been held to be a proper remedy in actions for breach of contract for the sale of real property or when the uniqueness of the goods in question makes calculation of money damages too difficult or too uncertain.” (Cho, 300 AD2d at 175.)
Plaintiffs have adequately alleged that money damages would be inadequate because defendant’s air rights are essential to the completion of the project in compliance with New York City zoning rules.
B. Plaintiffs’ Motion for a Preliminary, Permanent and Mandatory Injunction
1. Preliminary Injunction
Plaintiffs seek a preliminary injunction prohibiting defendant from selling, using or otherwise encumbering the air rights.
CPLR 6301 provides that the court may grant a preliminary injunction “in any action where the plaintiff has demanded and would be entitled to a judgment restraining the defendant from the commission or continuance of an act, which, if committed or *535 continued during the pendency of the action, would produce injury to the plaintiff.”
“ The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor.” (Nobu Next Door, LLC v Fine Arts Hous., Inc., 4 NY3d 839, 840 [2005].)
“As to the likelihood of success on the merits, a prima facie showing of a right to relief is sufficient; actual proof of the case should be left to further court proceedings.” (McLaughlin, Piven, Vogel v Nolan & Co., 114 AD2d 165, 172-173 [1986].)
Plaintiffs have met this standard for likelihood of success on the merits. As explained above, plaintiffs have stated claims for breach of contract and for a declaratory judgment. Plaintiffs have further shown that the contract requires defendant to refrain from selling, using or otherwise encumbering the air rights. Plaintiffs have made a prima facie showing of their right to the relief.
Plaintiffs have also adequately demonstrated that they will suffer irreparable harm in the absence of a preliminary injunction. Plaintiffs assert that the air rights are necessary to the completion of the project because replacement air rights are not available on the market. Plaintiffs will not, therefore, be able to complete the project as planned without defendant’s air rights.
Defendant contends that there is no risk that the air rights will be sold, used or otherwise encumbered during the course of the instant litigation because defendant’s property is subject to a notice of pendency. Bafflingly, defendant also argues that the court should not enjoin defendant from encumbering the air rights because defendant plans to finance its defense costs in this case by mortgaging its property. By definition, defendant’s property includes defendant’s air rights. If defendant were to encumber its property and air rights, such encumbrance would undermine any award of a declaratory judgment or specific performance in this case.
Defendant also argues that the balance of the equities is in its favor. Defendant asserts that the imposition of a preliminary injunction is inequitable because the value of defendant’s property has skyrocketed with the recent completion of the nearby High Line. A preliminary injunction would prevent defendant from profiting from this stroke of good fortune. Defendant undermines its own assertion that a notice of pendency removes *536 any risk that plaintiffs’ rights would be irreparably violated. The balance of the equities weighs in plaintiffs’ favor. Plaintiffs’ right to the relief it seeks in this action and, ultimately, its ability to complete the project could be damaged in the absence of a preliminary injunction if defendant were to sell or use the air rights. At most, defendant may be briefly delayed in selling its property to a theoretical prospective purchaser.
Plaintiff has met all of the requirements for a preliminary injunction under CPLR 6301. Furthermore, a preliminary injunction enjoining defendant from selling or otherwise encumbering the air rights is “properly granted to assure the efficacy of any declaratory judgment” affirming defendant’s obligations under the contract. (M&A Oasis, 307 AD2d at 872-873.) Therefore, plaintiffs’ motion for a preliminary injunction preventing defendant from selling or otherwise encumbering the air rights is granted.
a. Undertaking
Defendant requests that the court require plaintiffs to post an undertaking in the amount of $4.6 million to cover any damages incurred by defendant due to the preliminary injunction. Defendant claims that it will suffer damages because “the market for properties . . . close to the newly-opened ‘High Line’ park in Chelsea, is booming [and] Defendant’s opportunity to market or utilize its unused [air] rights in such a hot market may never come again.” (Defendant’s mem of law in opposition to plaintiffs’ motion for a temporary restraining order and preliminary injunction at 10.) Defendant does not substantiate these claims or offer any other damages it may suffer due to the preliminary injunction.
“[T]he amount of [an] undertaking must be rationally related to the amount of the defendant’s potential liability if the preliminary injunction later proves to be unwarranted, and not based upon speculation.” (Lelekakis v Kamamis, 303 AD2d 380, 380-381 [2d Dept 2003] [citations omitted].)
The amount of the undertaking defendant requests is purely based upon speculation. Defendant has not identified any other damages that it may suffer due to the preliminary injunction. Therefore, a $4.6 million undertaking is excessive and unrelated to any amount of damages that defendant may suffer.
Plaintiffs are to post an undertaking of $230,000, which is approximately five percent of the total contract price.
2. Permanent Injunction
*537 Plaintiffs additionally request a permanent injunction preventing defendant from selling or encumbering the air rights. A permanent injunction is inappropriate at this early stage of the litigation. Unlike a preliminary injunction, a permanent injunction is not a provisional remedy to preserve the status quo. Rather, “[a] permanent injunction is embodied in a final judgment which may be granted after a trial on the merits.” (Byrne Compressed Air Equip. Co. v Sperdini, 123 AD2d 368, 369 [2d Dept 1986].)
Plaintiffs’ motion for a permanent injunction is denied.
3. Mandatory Injunction
Plaintiffs seek a mandatory injunction directing defendant to use its best efforts to obtain the waiver and to provide plaintiffs the opportunity to seek the waiver itself.
“[C]ourts are generally reluctant to grant mandatory preliminary injunctions, and such relief will be granted only where the right [thereto] is clearly established. . . . [W]here the complainant presents a case showing or tending to show that affirmative action by the defendant, of a temporary character, is necessary to preserve the status of the parties, then a mandatory injunction may be granted.” CSecond on Second Café, Inc. v Hing Sing Trading, Inc., 66 AD3d 255, 265 [1st Dept 2009] [internal quotation marks and citations omitted].)
Plaintiffs failed to show that a mandatory injunction, which effectively grants the ultimate relief plaintiffs seek, is necessary to preserve the status quo. A temporary injunction preventing defendant from selling or encumbering the air rights sufficiently protects any rights plaintiffs may have under the contract.
Plaintiffs’ motion for a mandatory injunction is denied.
C. Plaintiffs’ Motion for Expedited Discovery
Plaintiffs move for expedited discovery. The discovery schedule plaintiffs proposed in a prior application before Judge Sherwood would have required defendant to produce all documents and complete depositions before the end of July 2012. Obviously, that schedule is no longer feasible. Plaintiffs do not propose an alternative schedule.
Furthermore, one of defendant’s primary objections to an accelerated discovery schedule was that the court had not yet decided defendant’s motion to dismiss. That argument is now moot.
An order directing expedited discovery is premature at this time. The parties should be afforded an opportunity to *538 amicably negotiate a workable discovery schedule in light of the current status of the case. The parties are, therefore, ordered to appear for a preliminary conference to discuss a discovery schedule with the assistance of the court. If necessary, the court will determine at that time whether expedited discovery is appropriate.
Plaintiffs’ motion for expedited discovery is, therefore, denied without prejudice.
IV Conclusion
For the reasons set forth above, it is hereby ordered that defendant Pradera Realty Inc. also known as Pradera Realty Corp.’s motion to dismiss is granted to the extent that plaintiffs Maestro West Chelsea SPE LLC and Kadima Tenth Avenue SPE LLC’s causes of action for specific performance and for breach of the implied covenant of good faith and fair dealing are dismissed; and it is further ordered that, due deliberation having been had, and it appearing to this court that a cause of action exists in favor of plaintiffs and against defendant and that the plaintiffs are entitled to a preliminary injunction on the ground that defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of plaintiffs’ rights respecting the subject of the action and tending to render the judgment ineffectual, as set forth in the aforesaid decision, it is ordered that the undertaking is fixed in the sum of $230,000 conditioned that plaintiffs, if it is finally determined that they were not entitled to an injunction, will pay to defendant all damages and costs which may be sustained by reason of this injunction; and it is further ordered that defendant, its agents, servants, employees and all other persons acting under the jurisdiction, supervision and/or direction of defendant, are enjoined and restrained, during the pendency of this action, from doing or suffering to be done, directly or through any attorney, agent, servant, employee or other person under the supervision or control of defendant or otherwise, any of the following acts: selling, using or otherwise encumbering defendant’s unused air rights appurtenant to defendant’s properties located at 313, 315 and 317 10th Avenue, New York, New York during the pendency of this action; and it is further ordered that plaintiffs’ motion for a permanent injunction and a mandatory injunction is denied.

 The only unique fact plaintiffs assert is that defendant stated in its termination letter that the parties entered into the contract by virtue of a “mutual mistake.” Defendant has since abandoned its mutual mistake argument. Consequently, to the extent that plaintiffs base their claim thereon, plaintiffs’ argument is moot.