**Fenix Capital Funding, LLC v Daily Sale Inc**

2026 NY Slip Op 31045(U)

March 16, 2026

Supreme Court, Kings County

Docket Number: Index No. 514943/2025

Judge: Wavny Toussaint

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

At an IAS Term, Part 70 of the Supreme
Court of the State of New York, held in and
for the County of Kings, at the Courthouse,
at 360 Adams Street, Brooklyn, New York,
on the 16th March, 2026.

PRESENT:
HON. WAVNY TOUSSAINT,
                                    Justice.
-------------------------------------------------------------X
FENIX CAPITAL FUNDING, LLC,                                  Index No.: 514943/2025

                                                            **DECISION AND ORDER**

                              Plaintiff,
              -against-

DAILY SALE INC/DBA: DAILYSALE
and YANKI HOFSTATTER,

                              Defendants.
-------------------------------------------------------------X

The following e-filed papers read herein:            NYSCEF Doc Nos.:

Notice of Motion/Order to Show Cause/
Petition/Cross Motion and
Affidavits (Affirmations) Annexed_____            9-20
Opposing Affidavits/Answer (Affirmations)_____            22-26
Affidavits/ Affirmations in Reply _____            _____
Other Papers: _____            _____

Upon the foregoing papers, plaintiff Fenix Capital Funding, LLC ("Plaintiff")

moves (Seq. 01) for an order, pursuant to CPLR § 3212, granting summary judgment in its

favor against defendants Daily Sale Inc/DBA: DailySale and Yanki Hofstatter

(collectively, "Defendants"). Defendants oppose the motion.

## BACKGROUND

### *The Parties*

In this merchant cash advance proceeding pitting Plaintiff, a factoring entity in the merchant cash advance arena, against Defendant, a merchant to which it advanced a lump sum in consideration for future payments, as well as the merchant's guarantor, the parties are enmeshed in a dispute as to the enforceability of their underlying transaction.

### *The Underlying Transaction*

On February 26, 2025, the parties entered into a contract titled "Future Receivable Purchase Agreement" (the "Agreement"), pursuant to which Plaintiff advanced to defendant Daily Sale Inc/DBA: DailySale ("Defendant Seller") the sum of $37,000.00 in consideration for the purchase of a share of Defendant Seller's future accounts receivable (*see* NYSCEF Doc No. 13, Agreement ¶¶ 1.1, 1.2). Under the terms of the Agreement, Defendant Seller sold and assigned to Plaintiff four percent (4%) of its future sales proceeds, up to an aggregate amount of $51,060.00 (*id.* ¶ 1.2). As set forth in the Agreement:

> "Purchase and Sale of Future Receivables
> Fenix Capital Funding, LLC ('FNX') (together with its successors and/or assigns, the 'Purchaser') hereby purchases from the merchant set forth above [Defendant Seller] (the 'Merchant'), a percentage . . . (the 'Purchase Percentage'), of the proceeds of all future sales by Merchant, whether the proceeds are paid by cash, check, ACH and other electronic transfers, credit card, debit card, bank card . . . and/or other means . . . until Purchaser has received . . . [$51,060.00] (the

2

[* 2]

'Purchase Amount') in exchange for the advance by FNX to Merchant of the [$37,000.00] purchase price . . . ." (*id*. at 1).

Pursuant to the Agreement, payment of the future sales proceeds was to be made by daily Automatic Clearing House ("ACH") transfer from Defendant Seller's bank account to Plaintiff (*id*. ¶¶ 1.1, 1.2).

In conjunction with the Agreement, Defendant Yanki Hofstatter ("Defendant Guarantor"), the principal and owner of Defendant Seller, executed a personal guaranty of payment should Defendant Seller default in its obligations arising under the Agreement (*id*. at 2). Plaintiff alleges that, in conformity with the Agreement, it remitted the sum of $37,000.00, less processing and transaction fees, to Defendant Seller (*see* NYSCEF Doc No. 17, complaint ¶ 7).

Under the terms of the Agreement, Plaintiff was granted a security interest in Defendant Seller's assets, including its then-existing, and future, receivables as they are generated in the ordinary course of business (the "Collateral"). In particular, Section 1.6 of the Agreement provides as follows:

> "Section 1.6 Security Interest. As security for all 'Obligations' . . . Merchant hereby grants to Purchaser a continuing security interest in, and, as applicable, a general lien upon and/or a right of setoff against, all of Merchant's presently existing and hereafter created Receivables, General Intangibles . . . including, without limitation, any claims for tax refunds from any governmental authority due or to become due to Merchant which claims are hereby assigned to Purchaser, all proceeds of letters of credit, all credit balances with Purchaser, all instruments, all deposit accounts, all computer programs, software, licenses and permits and all Merchant's property of every kind and description, tangible or intangible, at any time in Purchaser's possession or subject to Purchaser's control, whether now or hereafter arising or now owned or hereafter

3

[* 3]

acquired and wherever located and all proceeds of the foregoing." (NYSCEF Doc No. 13, Agreement ¶ 1.6).

Plaintiff avers that it perfected its security interest in the Collateral via a UCC-1 Financing Statement filing (*see* NYSCEF Doc No. 16, UCC Financing Statement ¶ 4). Plaintiff asserts that on April 24, 2025, Defendant Seller defaulted under the Agreement by failing to remit its sales proceeds to Plaintiff, in contravention of the Agreement (*see* NYSCEF Doc No. 17, complaint ¶ 10).[1] Plaintiff alleges that Defendant Seller breached its obligations under the Agreement by placing a stop payment request to its bank for the ACH transfers, or, alternatively, closed the bank account altogether (*see* NYSCEF Doc No. 11, Leyvi affirm. ¶ 13).

Plaintiff further avers that, at this juncture, Defendant Seller has remitted to Plaintiff the sum of $24,390.12 in accordance with the Agreement, as reflected in the payment ledger (*see* NYSCEF Doc No. 10, Ryvkin aff. ¶ 12). Plaintiff posits that, in light of Defendant Seller's material breach of the Agreement, it is entitled to judgment against Defendants in the aggregate amount of $52,876.64, which sum consists of the purchased amount of $51,060.00 less the payments made by Defendant Seller under the Agreement

---

[1] Incongruously, in its affirmation in support of its summary judgment motion, Plaintiff contends that "[o]n or about July 19, 2019, Defendant-seller defaulted under the . . . [Agreement] by failing to remit its sales proceeds to Plaintiff as provided for in the parties' agreement" (*see* NYSCEF Doc No. 11, Leyvi affirm. ¶ 12). Insofar as the July 19, 2019 purported date of breach set forth in Plaintiff's moving affirmation precedes by over five years the parties' Agreement at issue herein (*see* NYSCEF Doc No. 13, Agreement, p. 2), one is constrained to conclude that the July 19, 2019 date of breach identified in Plaintiff's affirmation relates to a wholly distinct merchant cash advance transaction featuring a different set of defendants than those named in the present action.

[* 4]

in the amount of $24,390.12, plus default fees and contractual penalties amounting to $24,510.00 (*see* NYSCEF Doc No. 11, Leyvi affirm. ¶ 15).[2]

In light of the foregoing, Plaintiff instituted the present action on May 5, 2025, asserting breach of contract and fraud causes of action. Defendants interposed an answer with counterclaims on May 28, 2025.

## THE PARTIES' CONTENTIONS

In its breach of contract claim, Plaintiff alleges that it duly adhered to the terms of the parties' Agreement by remitting to Defendant Seller the agreed-upon sum of $37,000.00 (less fees) on February 26, 2025, which represented the purchase price of the receivables sold by Defendant Seller to Plaintiff (*see* NYSCEF Doc No. 17, complaint ¶ 15). Plaintiff contends that, notwithstanding having received the subject $37,000.00 advance, and deriving a consequential benefit from the sum in question, Plaintiff alleges Defendant Seller breached the terms of the Agreement by failing to remit the agreed-upon share of its sale proceeds to Plaintiff (*id.* ¶ 16). As a corollary, Plaintiff submits that, in light of Defendants' material breach of the terms of the Agreement, Plaintiff is entitled to a judgment against Defendants in the amount of $52,876.64 (*see* NYSCEF Doc No. 11, Leyvi affirm. ¶ 15).

Further, Plaintiff has asserted a fraud cause of action, predicated on the proposition that before the parties entered into the Agreement, Defendants made misrepresentations to

---

[2] Plaintiff's computation is inaccurate as to the aggregate sum it claims to be owed by Defendants (namely, $52,876.64), which aggregate alleged outstanding sum amounts to $51,179.88. Indeed, $51,060.00 - $24,390.12 + $24,510.00 = $51,179.88. As shall appear below, this computational discrepancy shall not affect the outcome of the present motion.

Plaintiff, which it reasonably relied on to its detriment (*see* NYSCEF Doc No. 17, complaint ¶ 26); namely, that Defendants would abide by the terms of the agreed upon transaction which was to be affected by means of daily ACH withdrawals (*id.* ¶ 27). Within the framework of its fraud claim, Plaintiff contends that, in reliance on Defendants' representations, Plaintiff remitted the sum of $37,000.00 to Defendants and that, despite having received said sum, Defendants failed to tender to Plaintiff its contracted share of Defendants' future accounts receivable (*id.* ¶ 28). Plaintiff maintains that, at the time Defendants made the above misrepresentations, Defendants were aware of their falsity, rendering such representations fraudulent in nature (*id.* ¶ 30). As Plaintiff indicates, "Defendants engaged in a 'bait and switch' scheme to commit Plaintiff to purchasing their future accounts receivable, which they never intended to provide to Plaintiff" (*id.*). Plaintiff claims that it reasonably relied on Defendants' misrepresentations to its detriment by remitting the sum of $37,000.00 (*id.* ¶ 31).

Defendants contend that Plaintiff's summary judgment motion should be denied as the Agreement, albeit denominated as a "Future Receivable Purchase Agreement," constitutes a loan agreement featuring a usurious rate of interest. As Defendants argue, the Agreement is "[i]n reality . . . a loan agreement that obligates defendants to pay interest on the loans" (*see* NYSCEF Doc No. 24, memo. of law ¶ I). In particular, Defendants contend that the "interest charged was in excess of over one hundred and ninety-six percent

[* 6]

(196%) well beyond the New York State statutory limits for civil and criminal usury. Accordingly, Defendants contend the loan agreement is unenforceable" (*id.*).[3]

## DISCUSSION

### *The Payment Ledger Is the Basis of Plaintiff's Motion*

Plaintiff all but concedes that a payment ledger (the "Payment Ledger") forms the basis of its summary judgment motion (*see* NYSCEF Doc No. 15, Payment Ledger at 1). As is customary in the merchant cash advance context, Plaintiff relies on the Payment Ledger to buttress its position that Defendants breached the parties' Agreement by failing to remit payments to Plaintiff in keeping with Defendants' payment duties delineated therein. Plaintiff chronicles Defendants' alleged breach of contract, relying upon the Payment Ledger, and argues "Defendant-seller defaulted under the . . . [Agreement] by failing to remit its sales proceeds to Plaintiff as provided for in the parties' agreement" (*see* NYSCEF Doc No. 11, Leyvi affirm. ¶ 12).

To prevail on its motion for summary judgment against Defendants( by establishing that Defendants materially breached their contractual duties under the Agreement), it is incumbent upon Plaintiff to authenticate the Payment Ledger, the document at the heart of Plaintiff's breach of contract claim. The sole potentially viable vehicle relied upon by Plaintiff to authenticate the Payment Ledger is the affidavit submitted by Alexander Ryvkin, Plaintiff's Collection Manager (the "Ryvkin Affidavit" or sometimes "Mr.

---

[3] The New York statutory provision governing usury provides that "[a] person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period. Criminal usury in the second degree is a class E felony" (Penal Law § 190.40).

[* 7]

Ryvkin"). The section of the Ryvkin Affidavit relevant to the admissibility of the Payment

Ledger reads as follows:

> "10. On or about 04/24/2025 [the "April 24th entry"],
> defendant-seller materially breached the . . . [Agreement] by
> placing a stop payment on Plaintiff's ACH withdrawal for the
> specified daily amount. A true copy of Plaintiff's payment
> ledger maintained in the ordinary course of its business
> demonstrating all payments made by defendant-seller is
> annexed hereto as Exhibit 'C'.

> \* \* \*

> "12. As demonstrated in the annexed payment ledger, to
> date, defendant-seller has paid plaintiff the amount of
> $24,390.12 under the . . . [Agreement]." (*see* NYSCEF Doc
> No. 10, Ryvkin aff. ¶¶ 10, 12).

### The Business Records Analysis

Plaintiff's above-quoted bid to authenticate the Payment Ledger is unavailing as

Plaintiff fails to adhere to the requirements of the business record exception to the hearsay

rule embodied in CPLR § 4518 (a),[4] which provides that:

> "(a) Generally. Any writing or record, whether in the form
> of an entry in a book or otherwise, made as a memorandum or
> record of any act, transaction, occurrence or event, shall be
> admissible in evidence in proof of that act, transaction,
> occurrence or event, if the judge finds that it was made in the
> regular course of any business and that it was the regular course
> of such business to make it, at the time of the act, transaction,
> occurrence or event, or within a reasonable time thereafter."

The Appellate Division, Second Department has held that, pursuant to CPLR § 4518 (a),

in order to establish a foundation for the admission of a hearsay business record, such as

---

[4] Hearsay is an out-of-court statement offered to prove the truth of the matter asserted (*Quinche v Gonzalez*, 94 AD3d 1075, 1075 [2d Dept 2012]); *Gelpi v 37th Ave. Realty Corp.*, 281 AD2d 392, 392 [2d Dept 2001]).

[* 8]

the Payment Ledger herein, the proponent of the record must, at a minimum, satisfy the following three requirements:

> "First, the proponent must establish that the record be made in the regular course of business—essentially, that it reflects a routine, regularly conducted business activity, and that it be needed and relied on in the performance of functions of the business . . . Second, the proponent must also demonstrate that it be the regular course of such business to make the record . . . essentially, that the record be made pursuant to established procedures for the routine, habitual, systematic making of such a record . . . Third, the proponent must establish that the record be made at or about the time of the event being recorded— essentially, that recollection be fairly accurate and the habit or routine of making the entries assured" (*Bank of N.Y. Mellon v Gordon*, 171 AD3d 197, 205 [2d Dept 2019] [internal citations and quotation marks omitted]; *see also Yassin v Blackman*, 188 AD3d 62, 65-66 [2d Dept 2020]; *Corsi v Town of Bedford*, 58 AD3d 225, 229 [2d Dept 2008]).

An analysis of the Ryvkin Affidavit reveals that Mr. Ryvkin fails to establish that the Payment Ledger was made at or about the time of the events being recorded (*Bank of N.Y. Mellon v Demasco*, 226 AD3d 855, 857 [2d Dept 2024]), notwithstanding his general recitations found in Paragraph 3 thereof. Critically, Mr. Ryvkin fails to confirm whether the specific April 24th entry (or any of the other entries), actually were made "at or about the time" they occurred; a confirmation which is necessary in order to permit the Court to gauge whether recollection of the entry was fairly accurate and the habit or routine making of the entries assured (*Bank of N.Y. Mellon v Gordon*, 171 AD3d at 205). Having sidestepped the core temporality element, required under CPLR § 4518, Plaintiff failed to lay a foundation for the admission of the hearsay Payment Ledger (*U.S. Bank N.A. v Kochhar*, 176 AD3d 1010, 1012 [2d Dept 2019]). Accordingly, Plaintiff's attempted

9

reliance on the Payment Ledger to underpin its position that Defendants breached the Agreement must fail (*Id.*). Without the Payment Ledger, Plaintiff cannot establish Defendants' payment history and alleged default under the Agreement.

### *The Undated, Vague Payment Ledger*

Even assuming, arguendo, that Plaintiff had duly authenticated the Payment Ledger on which its summary judgment motion rests, a substantive review of this document reveals that it does not bear any discernable nexus to the parties' transaction. Notably, the Payment Ledger: (i) does not feature the specific names of the parties to the present proceeding, namely, Plaintiff Fenix Capital Funding, LLC or Defendants Daily Sale Inc/DBA: DailySale and Yanki Hofstatter; (ii) does not reference the parties' alleged Agreement; and (iii) is undated (*see* NYSCEF Doc No. 15, Payment Ledger at 1).

In sum, the Payment Ledger on which the viability of Plaintiff's motion hinges could relate to a payment history between parties wholly unrelated to the parties to the instant action, bound by a contract unrelated to the within Agreement (*id.*). Indeed, the Payment Ledger, a skeletal spreadsheet nebulously titled "Payments for Deal ID: 383579" consists of a mere six columns bearing the following scant information: (i) a column titled "Effective Date" comprised of 12 dates ranging from "03/03/25" to "05/01/25" (*id.*); (ii) a column titled "Amount" featuring the sum "$2,836.37" or the symbol "-" associated with various dates; (iii) a column titled "Return Code" featuring the undefined code "R29" connected to the date "05/01/29" (*id.*); (iv) a column titled "Returned Fee" consisting of two "$50.00" entries relating to the date "05/01/25" (*id.*); (v) a column titled "Source" featuring 12 rows, each of which contains the undefined compound term "ACH works"

10

(*id.*); and (vi) a column titled "Trans Desc" consisting of 12 rows featuring the term "FNX" (*id.*).

In light of the inscrutable code-laden nature of the spreadsheet featured in the Payment Ledger, it scarcely comes as a surprise that in his affidavit, Mr. Ryvkin steers clear of any analysis of the Payment Ledger itself, and in conclusory fashion states the ledger supports Plaintiff's position that Defendants breached their payment duties under the Agreement by merely remitting $24,390.12[5] of the $51,060.00 agreed-upon monies due to Plaintiff (*see* NYSCEF Doc No. 10, Ryvkin aff. ¶¶ 10, 12). Based on the foregoing, the Court finds that the undated Payment Ledger neither references the Agreement nor the specific parties to the present proceeding, and cannot plausibly serve as the cornerstone of plaintiff's summary judgment motion (*U.S. Bank N.A. v Ramanababu*, 202 AD3d 1139, 1141-1142 [2d Dept 2022]; *Citigroup v Kopelowitz*, 147 AD3d 1014, 1015 [2d Dept 2017]).

***Plaintiff's Hearsay Contention***

Plaintiff additionally argues Defendant Seller materially breached the parties' Agreement by issuing a stop payment directive to its banking institution as to Plaintiff's ACH withdrawal, halting automatic payments to Plaintiff emanating from Defendant Seller's account. As the Ryvkin Affidavit asserts:

> "7. Critical to facilitating the transaction set forth in the . . .
> [Agreement], Section 6.1 of the . . . [Agreement] contains

---

[5] A computation of the data featured in the "Amount" column of the Payment Ledger redoubles the conundrum engendered by this document as the eight $2,836.67 figures set forth in the column in question amount to a mere $22,693.36 in the aggregate, which figure differs from, and is less than, the $24,390.12 sum Alexander Ryvkin, Plaintiff's Collection Manager, avers Defendants remitted to Plaintiff (*see* NYSCEF Doc No. 10, Ryvkin aff. ¶¶ 12).

11

[* 11]

> defendant-seller's express covenant not to revoke the ACH authorization which permits Fenix Capital Funding, LLC to withdraw the specified percentages by ACH debits to defendant-seller's bank account.

* * *

> "10.    On or about 04/24/2025, defendant-seller materially breached the . . . [Agreement] by placing a stop payment on Plaintiff's ACH withdrawal for the specified daily amount." (*see* NYSCEF Doc No. 10, Ryvkin aff. ¶¶ 7, 10).

This contention, however, is not buttressed by documentary evidence other than the inadmissible hearsay statement to this effect set forth by Mr. Ryvkin, who has no personal knowledge of the directions given by Defendants to their bank, particularly as it relates to the issuance of a stop payment directive. The Court finds Plaintiff's hearsay contention regarding the ACH payments unavailing.

As the Appellate Division, Second Department held in reversing the trial court's grant of summary judgment to plaintiff, a banking institution, where, as here, plaintiff failed to support its moving affidavit with documentary evidence substantiating defendant's alleged breach of contract:

> "The plaintiff failed to demonstrate, prima facie, the defendant's default in payment under the note. In her affidavit, Wallace stated that the defendant failed to make certain payments due under the terms of the note and mortgage, but she failed to identify the records that she relied upon and did not attach those records to her affidavit (citations omitted) Thus, her assertions as to the defendant's default were inadmissible hearsay (*citations omitted*) . . . Since Wallace's affidavit was the only evidence of default proffered in support of its motion, the plaintiff failed to establish its prima facie entitlement to judgment as a matter of law" (*U.S. Bank N.A. v Zakarin*, 208 AD3d 1275, 1277 [2d Dept 2022]; *see also S.M.S.*

12

*Fin. XXXI, LLC v Hutson*, 190 AD3d 1002, 1003 [2d Dept 2021]).

For all the foregoing reasons, the Payment Ledger is inadmissible. Having no support for its motion, Plaintiff has failed to establish its prima facie entitlement to judgment as a matter of law on the breach of contract cause of action (*Federal Natl Mtge. Assn. v Marlin*, 168 AD3d 679, 680-681 [2d Dept 2019]; *Deutsche Bank v Natl. Trust Co. v Brewton*, 142 AD3d 683, 685 [2d Dept 2016]).

### *Plaintiff's Fraud Cause of Action*

A fraud cause of action is not legally cognizable where the fraud claim relates to a breach of contract (*Board of Mgrs. of Beacon Tower Condominium v 85 Adams St., LLC*, 136 AD3d 680, 684 [2d Dept 2016]; *WIT Holding Corp. v Klein*, 282 AD2d 527, 528 [2d Dept 2001]). Here, Plaintiff's fraud cause of action is inextricably interwoven with the parallel breach of contract claim. Indeed, Plaintiff's fraud claim rests on the notion that before the parties entered into the Agreement, Defendants made misrepresentations to Plaintiff, upon which Plaintiff relied (*see* NYSCEF Doc No. 17, complaint ¶ 26). As previously detailed (*id.* ¶ 27), Plaintiff tendered $37,000.00 to Defendants and that, despite having received the subject sum from Plaintiff, Defendants refused to tender to Plaintiff its contracted share of Defendants' future accounts receivable (*id.* ¶ 28).

Plaintiff avers that Defendants knew their representations were false (*id.* ¶ 30). As Plaintiff alleges in the complaint, "Defendants engaged in a 'bait and switch' scheme to commit Plaintiff to purchasing their future accounts receivable, which they never intended to provide to Plaintiff" (*id.*). Under these circumstances, Plaintiff's fraud claim is not

13

[* 13]

legally cognizable, as it is premised on an alleged misrepresentation of intent to perform contractual obligations and therefore fails to state a viable cause of action for fraud (*WIT Holding*, 282 AD2d at 528; *Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 118 [1st Dept 1998]). Defendants' purported failure to tender to Plaintiff the agreed-upon share of Defendants' future accounts receivable constitutes but a breach of contract to be enforced through a cause of action on the Agreement, as distinguished from a fraud claim (*Westminster Constr. Co. v Sherman*, 160 AD2d 867, 868 [2d Dept 1990]).

In short, in its fraud cause of action, Plaintiff does no more than recast its breach of contract claim using fraud-related nomenclature.

## CONCLUSION

Accordingly, it is hereby

**ORDERED,** that plaintiff Fenix Capital Funding, LLC's motion (Seq. 01) for an order, pursuant to CPLR § 3212, granting summary judgment in its favor against defendants Daily Sale Inc/DBA: DailySale and Yanki Hofstatter, is denied in every respect.

Any arguments not expressly addressed herein were considered and deemed to be without merit.

This constitutes the decision and order of the Court.

ENTER

_____
J.S.C.

HON. WAVNY TOUSSAINT
J. S. C.

14